## OSGOOD'S ADM'RS *v.* ARTT.

*(Circuit Court, N. D. Illinois. 1883.)*

1. NEGOTIABLE PAPER—TRANSFER WITHOUT INDORSEMENT.
   By the rules of the law-merchant, the purchaser of negotiable paper, payable to order, unless it be indorsed by the payee, takes subject to any defense which the payor has against the payee. He becomes, in such case, only the equitable owner of the debt or claim evidenced by the security.
2. SAME—INDORSEMENT ON SECURITY.
   As a general rule the legal title to negotiable paper, payable to order, passes only by the payee's indorsement on the security itself, or on a piece of paper so attached to the original instrument as, in effect, to become a part of it, or incorporated into it.
3. SAME—ASSIGNMENT BY WORDS IN SEPARATE INSTRUMENT.
   Words of assignment and transfer, contained in a separate instrument, executed for a wholly different and distinct purpose, are not equivalent to an indorsement, within the settled rules of the law-merchant.
4. SAME—SUBSEQUENT INDORSEMENT—NOTICE OF DEFENSE.
   A subsequent indorsement made after notice of the payor's defense, although the paper was purchased without notice of defense, will not relate back to the time of purchase, so as to cut off the equities of the payor against the payee.

At Law.

*W. H. Swift,* for plaintiffs.

*Edsall, Hawley & Edsall,* for defendant.

HARLAN, Justice. On the fourteenth day of May, 1856, the defendant, Artt, executed and delivered to the Racine & Mississippi Railroad Company his note, whereby, for value received, he promised to pay to that company or order, at the expiration of five years from May 10, 1856, the sum of $2,500, together with interest at the rate of 10 per cent. per annum, payable annually on the tenth day of May of each year,—principal and interest payable at the office of the com-

pany in the city of Racine, Wisconsin. At the same time, Artt, to secure the payment of the note, executed to the company his mortgage upon certain real estate in Carroll county, in this state. Subsequently, the company made its bond, under date of June 10, 1856, acknowledging its indebtedness to and promising to pay Charles Osgood, or bearer, $2,500 on the tenth of May, 1861, at its office in the city of New York, together with interest from and after the tenth day of May, at the rate of 10 per cent. per annum, payable semi-annually on each tenth day of November and May, upon the presentation and surrender of the interest coupons at the said office. That bond contained these clauses:

"To the payment whereof the said company hereby bind themselves firmly by these presents; and, for the better security of such payments being made to the holder thereof, the said company *have assigned and transferred*, and *by these presents do assign and transfer*, to the said holder of this bond a certain note for the sum of $2,500, executed by Robert Artt, of Carroll county, together with a mortgage given collateral to and for the purpose of securing the payment of the same, dated on the fourteenth day of May, 1856, payable in five years from the tenth day of May, 1856, with interest at the rate of 10 per cent. per annum, which said note and mortgage are hereto appended, and *are transferable in connection with this bond, and not otherwise,* to any parties or purchasers whomsoever. And the said company do hereby authorize and empower the holder of this bond at any time, in case said company shall fail to perform any of the foregoing stipulations by neglecting to pay either principal or interest on this bond when the same shall become due, to proceed and foreclose the said mortgage, or take such other legal remedy on said note and mortgage against said mortgagor, or against this company on this present bond, or on both, as shall seem proper and expedient to said holder hereof."

Some time in the summer of 1857 the railroad company sold the bond, delivering therewith the note and mortgages to plaintiffs' intestate,—the bond, note, and mortgage being attached firmly together with eyelets in the order in which they are named, the bond on the top, next the note, and then the mortgage. The bond, note, and mortgage each bears the number 1,964 written thereon in ink. At the time of such purchase and delivery Osgood had no notice of any defense to the note, nor of any of the matters alleged in defendant's third plea. That plea states facts which are conceded to show a good defense as between Artt and the railroad company, viz., an entire failure of consideration, and also fraud, upon the part of the company, in procuring the execution of the note and mortgage. The note, bond, and mortgage, after their delivery to deceased, remained attached in the manner just stated. Upon the back of the note are the words "Racine & Mississippi Railroad Company, by H. S. Durand, President," which is the indorsement of the railroad company, placed thereon by its authority. It had not, however, been placed there when Osgood purchased and received the note, bond, and mortgage, but was made at some date subsequent to June, 1859. Before the indorsement was, in fact, made on the note, but after the purchase by Osgood, he had notice as well of the fraud practiced by the rail-

road on Artt, as of the failure of consideration in the note, as set out in the defendant's third plea.

These facts have been specially found by a jury, and the sole question for determination is whether, upon this finding, the plaintiffs are entitled to judgment. The only issue of fact made on the third plea is whether Osgood, prior to the indorsement of the note, had notice of the alleged fraud and failure of consideration.

1. It is a settled doctrine of the law-merchant that the *bona fide* purchaser for value of negotiable paper, payable to order, if it be indorsed by the payee, takes the legal title unaffected by any equities which the payor may have as against the payee.

2. But it is equally well settled that the purchaser, if the paper be delivered to him without indorsement, takes, by the law-merchant, only the rights which the payee has, and therefore takes subject to any defense the payor may rightfully assert as against the payee. The purchaser in such case becomes only the equitable owner of the claim or debt evidenced by the negotiable security, and, in the absence of defense by the payor, may demand and receive the amount due, and, if not paid, sue for its recovery, in the name of the payee, or in his own name, when so authorized by the local law.

3. As a general rule the legal title to negotiable paper, payable to order, passes, according to the law-merchant, only by the payee's indorsement on the security itself. The only established exception to this rule is where the indorsement is made on a piece of paper, so attached to the original instrument as, in effect, to become part thereof, or be incorporated into it. This addition is called, in the adjudged cases and elementary treatises, an *allonge*. That device had its origin in cases where the back of the instrument had been covered with indorsements, or writing, leaving no room for further indorsements thereon. But, perhaps, an indorsement upon a piece of paper, attached in the manner indicated, would now be deemed sufficient to pass the legal title, although there may have been, in fact, room for it on the original instrument.

4. But neither the general doctrines of commercial law, nor any established exception thereto, make words of mere assignment and transfer of such paper—contained in a separate instrument, executed for a wholly different and distinct purpose—equivalent to an indorsement within the rule, which admits the payor to urge, as against the holder of an unindorsed negotiable security, payable to order, any valid defense which he has against the original payee.

5. The transfer of the note in suit, by words of assignment in the body of the railroad company's bond, did not, in the judgment of the court, amount to an indorsement of the note, although the bond, note, and mortgage were orginally fastened together by eyelets. The facts set out in the third plea, and sustained by the special finding, constitute, therefore, a complete defense to the action, unless, as contended

v.17,no.7—37

by plaintiffs, the subsequent indorsement, in form, by the railroad company, after Osgood was informed of Artt's defense, has relation back to the time when the former, without notice of such defense, purchased the note for value then paid. If, at the time of Osgood's purchase, it had been agreed that the company should *indorse* the note, but the indorsement was omitted by accident or mistake or fraud upon the part of the company, a different question would have been presented. In such case, the company might, perhaps, have been compelled to make an indorsement which would have been deemed effectual as of the time when, according to the intention of the parties, it should have been made. But no such case is presented by the special finding. It is entirely consistent with the facts found that the indorsement by the company was an afterthought, induced by notice of Artt's defense, and was not within the contemplation or contract of the parties when Osgood purchased the bond. Moreover, and as a circumstance significant of an intention to restrict, in some degree, the assignability of the note and mortgage, it is expressly stipulated, in the company's bond, that they are transferable in connection with the bond, and not otherwise.

I am of opinion that the facts which came to Osgood's knowledge prior to the indorsement, and which, in substance, constitute the defense set out in the third plea, furnished notice that the company had, by reason of fraud and failure of consideration, lost its right to demand payment of the note from Artt. By the indorsement, after such notice, Osgood could not acquire any greater rights than the company possessed. He did not become the holder of the note by *indorsement*, as required by the law-merchant, until after he had notice that the company could not rightfully pass the legal title, so as to defeat Artt's defense.

While the adjudged cases are not in harmony upon some of these propositions, the conclusions indicated are, in the opinion of the court, consistent with sound reason, and are sustained by the great weight of authority.[1]

The facts specially found do not authorize a judgment for the plaintiffs.

[1] Chief Justice MARSHALL, in *Hopkirk* v. *Page*, 2 Brock. 41; *Sturges' Sons* v. *Met. Nat. Bank*, 49 Ill. 231; *Melendy* v. *Keen*, 89 Ill. 404; *Haskell* v. *Brown*, 65 Ill. 37; *Lancaster Nat. Bank* v. *Taylor*, 100 Mass. 24; *Bacon* v. *Cohea*, 12 Smedes & M. 522; *Grand Gulf Bank* v. *Wood*, Id. 482; *Clark* v. *Whitaker*, 50 N. H. 474; *Haskell* v. *Mitchell*, 53 Me. 468; *Franklin* v. *Twogood*, 18 Iowa, 515; *French* v. *Turner*, 15 Ind. 59; *Folger* v. *Chase*, 18 Pick. 63; *Whistler* v. *Forster*, 14 C. B. 246, (108 E. C. L. 248;) *Harrop* v. *Fisher*, 10 C. B. (N. S.) 196; *Gibson* v. *Minet*, 1 H. Bl. s. p. 606; Story, Notes, § 120; Story, Bills, § 201; Chitty, Bills, (12th Amer. from 9th Lond.) 252; 2 Pars. Notes & Bills, 1, 17, 18; 1 Daniel, Neg. Inst. (3d Ed.) §§ 664a, 689a, 690, 741, and 748a