MARTHA ELIAS *vs.* ANDREW J. FINNEGAN.

June 16, 1887.

Promissory Note—Indorsement in Course of Business.—The indorsement of a negotiable promissory note, making it payable simply to the order of A., who has no personal interest in the transaction, the indorsement being really made for the benefit of B., is not a transfer to B. in the usual course of business, so as to exclude defences by the maker, as against the payee.

Same—Fraudulent Intent of Payee.—The intention of the payee to convert to his own use a note given to him for the benefit of another, would be no defence to the maker, if in fact the note was not so converted, but was used in accordance with the intention of the maker.

Action in the district court for Hennepin county upon a promissory note made by defendant. Plaintiff appeals from an order by *Young, J.*, refusing a new trial, after a verdict for defendant.

*C. H. Benton,* for appellant.

*C. D. O'Brien,* for respondent.

DICKINSON, J. This is an action upon a negotiable promissory note, made by the defendant to one Holdridge, and payable to his order. One subject of controversy is as to the plaintiff being a *bona fide* purchaser of the instrument before maturity, and in the usual course of business, so as to exclude a defence alleged as to the original payee. The note was made on the 9th day of June, and was payable two months after date. On or before July 17th, the note was transferred to the plaintiff without indorsement, but on that date it was indorsed by Holdridge, and thereby made payable to one Benton. It was thus indorsed to Benton for the benefit of the plaintiff, although that fact did not appear from the indorsement itself. August 4th, Benton, by indorsement to one Buck, transferred the note to him, but in fact, as it now appears, for the benefit of the plaintiff. Neither Benton nor Buck paid anything for the note, and they had no real personal interest in it. After the maturity of the note, Buck formally transferred the instrument to the plaintiff by a blank indorsement.

The transfer from the payee to the plaintiff, or for her benefit, by the indorsement to Benton, was not a transfer in the usual course of business, and the plaintiff was not prohibited from defences which would be available as against the payee. *Roberts* v. *Hall,* 37 Conn. 205. It is not according to the usual course of commercial transactions for a holder of negotiable paper, desiring to transfer it by indorsement to a purchaser, to make the indorsement to a third party, who thus is made the apparent holder, while in fact he has no interest in the transaction. The indorsement did not purport to transfer the note to the plaintiff, or to give her any interest in it. By the indorsement alone to Benton, the note was not transferred to the plaintiff. She could be shown to be the real holder only by proof of some agreement or fact other than such as the indorsement imports.

The court, therefore, correctly ruled that the plaintiff was not in a position justifying the exclusion of the attempted defences.

It appeared, upon the trial, that the payee, Holdridge, was a clerk or agent of a firm of grain brokers, Adair & Co., with whom the defendant had been doing business. The evidence tended to show that Holdridge obtained the making of the note by means of representations to the defendant that the state of his accounts with Adair & Co. was such as to make it necessary for him (defendant) to make further advances or "margins," to warrant Adair & Co. in holding wheat alleged to have been bought on account of defendant. It is alleged on the part of the defendant that such representations were untrue, and were fraudulently made; but the court, considering that there was no evidence that the representations were untrue, instructed the jury accordingly. But the court submitted it to the jury to determine whether Holdridge fraudulently procured the making of the note for his own benefit, with the intention of converting it to his own use, and not for Adair & Co.; and instructed the jury that, if such were the fact, it would constitute a defence. This was excepted to. We consider, as did the court below, that this matter was within the issues presented by the answer; but we are unable to see that this would be a defence, under the circumstances which the evidence went to show as existing in this case. Whatever may have been the secret intention and purpose of Holdridge, the note was procured professedly for the benefit of Adair & Co. We may assume, for the purpose of deciding this question, that the defendant made the note for the benefit of Adair & Co., as the evidence tends to show. It further appears, without contradiction, that the note was disposed of by Holdridge to the plaintiff by authority of Adair & Co., and on account of an indebtedness from them to plaintiff. Holdridge's intent to divert the note from the purpose for which it was given would not be a defence, if in fact it was actually used as intended by the maker. We therefore think that the exception was well taken.

We think, too, that there was no evidence justifying the submission to the jury of the question whether the transfer of the note to the plaintiff by Holdridge was authorized by Adair & Co. All of the

evidence bearing upon that point is directly to the effect that the transfer was authorized.

Order reversed, and new trial awarded.