Decided 21 January, 1908.

## FIRST NATIONAL BANK *v.* McCULLOUGH.

### 93 Pac. 366.

TRIAL—EVIDENCE—ORDER OF PROOF—STATUTORY PROVISIONS.

1. In an action by a bank on notes transferred to it without endorsement, admission of evidence tending to show that the original holder had agreed to cancel the notes before showing that the one transferring the notes to the bank had knowledge of the agreement, is not error, in view of Section 842, B. & C. Comp., providing that the order of proof shall be regulated by the sound discretion of the court.

APPEAL—QUESTIONS TO BE CONSIDERED—MATTERS NOT RAISED IN LOWER COURT.

2. Where a bank sues on notes indorsed to its cashier in his own name only, and the question of the bank's right to maintain the action is not raised at the trial, it cannot be considered on appeal.

EVIDENCE—PAROL EVIDENCE AS TO INDORSEE—STATUTORY PROVISIONS.

3. The provision of the negotiable instrument law (Section 4444, B. & C. Comp.) that, when an instrument is drawn or indorsed to a person as "cashier"

of a bank, it is deemed *prima facie* to be payable to the bank of which he is such officer, and may be negotiated by the indorsement of either the bank or the officer, was based on the theory that the qualifying word creates an ambiguity as to the real party intended, to explain which parol evidence is admissible; but, where a note is endorsed to N. without any qualifying word, even if N. is in fact the cashier of a bank, parol evidence is not admissible to show that the bank was the party intended as the indorsee.

APPEAL—REVIEW—CROSS-EXAMINATION—BILL OF EXCEPTIONS.

4. An assignment of error as to permitting cross-examination of a witness regarding matters not testified to on direct examination, cannot be considered, when the bill of exceptions does not purport to contain all his testimony on direct examination.

BILLS AND NOTES—EFFECT OF TRANSFER WITHOUT INDORSEMENT—DE-FENSES.

5. Under the law merchant, which has become a part of the common law, a transfer of a promissory note, payable to order, to bar equities, must be by indorsement to one who has no notice of the equities, and for a valuable consideration before maturity. Hence, where a note is indorsed to the cashier of a bank, who delivers it to the bank without indorsement, in a suit thereon by the bank the note is subject to all equities existing in favor of the makers.

SAME—RIGHT OF ACTION—STATUTORY PROVISIONS.

6. A transfer without indorsement of a promissory note, payable to order, assigns under the law merchant only an equitable right, which could be inforced by suit in the name of the payee only; but under Section 27, B. & C. Comp., providing that every action, with certain exceptions, shall be prosecuted in the name of the real party in interest, a bank may maintain an action in its own name on a note transferred to it without indorsement.

APPEAL—FINAL ORDERS—DENIAL OF NEW TRIAL.

7. The denial of a motion for a new trial is not a final order from which an appeal will lie.

SAME—RESERVATION OF GROUNDS OF REVIEW.

8. A decision of a trial court is not reviewable on appeal, unless the question was distinctly presented to the trial court for its action. Hence, where the trial court was not requested to give any instruction involving a consideration of all the testimony, the evidence will not be examined on appeal to determine whether, on the whole evidence, the judgment was right.

From Umatilla: HENRY J. BEAN, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by the First National Bank of Pomeroy, Iowa, a corporation, against B. F. McCullough and M. H. Gillette, to recover on two promissory notes. The facts, so far as deemed material herein, are that on March 2, 1904, and November 23d of that year, the defendants obtained from one W. J. Furnish, leases of certain lands in Umatilla County for a term which would expire March 1, 1907, agreeing to give for the use of the premises $640 annually. This sum was evidenced

by their negotiable promissory notes, executed to Furnish, for $512 and $128, respectively, which instruments, given for the rent of 1905, were payable June 1, 1906. The leases did not contain a covenant to the effect that in case of a sale of the real property the tenancy could be terminated at the option of either party. The landlord, in the fall of 1905, listed the land with one M. L. Moody, an agent, for sale, to whom he duly indorsed the notes, which would mature June 1, 1906. The agent having entered into a contract for the sale of the premises with one G. E. York, the defendants surrendered to the latter the possession of the real property, and relinquished to him all their rights under the leases. The notes mentioned were, prior to their maturity, transferred by the following indorsement: "Pay A. B. Nixon or order, waiving demand and notice of protest. H. L. Moody." The person named as the last indorsee was at the time of such transfer the cashier of the plaintiff bank. No part of the notes having been paid, this action was instituted without any other written transfer of the negotiable instruments. The complaint, embracing two causes of action, is in the usual form, states when the notes were executed, and contains, *inter alia,* in each count, the following averment: "That thereafter, and before the maturity thereof, said note was indorsed, transferred, and assigned to the plaintiff herein, and plaintiff is now the owner and holder of said note." The answer denies the material allegations of the complaint, states the facts, in substance as hereinbefore detailed, and avers, in effect, that about March 8, 1906, and while the defendants had a crop growing on the leased land, they, at the request of Furnish, who then was the owner and holder of the notes sued on, and at the solicitation of York, who had secured a contract for the purchase of the premises, surrendered to the latter the possession of the real property, in consideration of the cancellation of the notes given for the rent; that at that time Moody, who was then the agent of Furnish, was advised by the defendants of the payment of the notes, which, without any consideration therefor, and not in

the ordinary course of business, were delivered to the plaintiff. The allegations of new matter in the answer were denied in the reply, and the cause having been tried, the defendants secured a verdict, and from the judgment rendered thereon, the plaintiff appeals.                                        AFFIRMED.

For appellant there was a brief over the names of *McCourt & Phelps,* with an oral argument by *Mr. John McCourt.*

For respondent there was a brief over the names of *Lowell & Winter,* with an oral argument by *Mr. John P. Winter.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. It is contended that an error was committed in permitting the defendants to introduce evidence tending to show that the notes sued on were agreed to be canceled by Furnish without having first shown that Nixon, the cashier of the plaintiff bank, had knowledge of the alleged agreement. The order of proof is a matter within the sound discretion of the trial court, the exercise of which will not be disturbed, except for an abuse of such discretion: Section 842, B. & C. Comp.; *Jones* v. *Peterson,* 44 Or. 161 (74 Pac. 661). An examination of the bill of exceptions fails to disclose any misuse of the power thus reposed.

2. It is maintained that the court erred in striking out, over objection and exception, Moody's testimony to the effect that the notes in question were indorsed to the plaintiff. No question seems to have been raised at the trial as to the right of the bank to maintain this action as the real party in interest. The consideration of the exception reserved is therefore limited to an inquiry as to whether or not parol evidence was admissible to show that the indorsement of the notes to Nixon, though not designated as cashier, was such a transfer as vested the legal title in the bank, and precluded the defendants from maintaining any defense that they might have had against the payee or indorsee. We will examine the cases to which plaintiff's counsel call attention in support of the legal principle which they seek to invoke. In *Arlington* v. *Hinds,* 1 D. Chip. (Vt.) 431

(12 Am. Dec. 704), it was held that a note made to a town treasurer, "or his successors in office," might be sued by the town. In *National Life Ins. Co.* v. *Allen,* 116 Mass. 398, it was ruled that a principal might sue in his own name on a nonnegotiable promissory note, given for its benefit, but by its terms made payable to "J. T. Phelps, agent." In *Bank of New York* v. *Bank of Ohio,* 29 N. Y. 619, in adhering to the rule announced in the case of *Bank of Genesee* v. *Patchin Bank,* 19 N. Y. 312, it was determined that a bill drawn payable to "D. C. Converse, Esq., cashier," was payable to the bank of which he was the officer. So too, in *Baldwin* v. *Bank of Newbury,* 1 Wall. (U. S.) 234 (17 L. Ed. 534), it was adjudged that, where negotiable paper was drawn to a person by name, immediately after which appeared the word "cashier," but with no designation of the particular bank of which he was such officer, parol evidence was admissible to show that he was the cashier of the bank which was plaintiff in the suit, and that in taking the paper he was acting as agent for the corporation.

3. The rule to be extracted from these decisions has been embodied in our statute, known as the "Uniform Negotiable Instrument Law," as follows:

"When an instrument is drawn or indorsed to a person as 'cashier,' or other fiscal officer of a bank or corporation, it is deemed *prima facie* to be payable to the bank or corporation of which he is such officer, and may be negotiated by either the indorsement of the bank or corporation, or the indorsement of the officer": Section 4444, B. & C. Comp.

The clause just quoted, and the decisions adverted to, are undoubtedly based on the theory that the employment of the qualifying word "cashier" or other designation of a fiscal office, appended to the name of a payee or indorsee of commercial paper, creates an ambiguity as to the real party intended, to explain which parol evidence is admissible to show who is the principal for whose benefit such agent received or accepted the promise to pay a stipulated sum of money. In the case at bar, however, no official designation is added to Nixon's name, and hence no uncertainty is apparent from an inspection of the in-

dorsement made by Moody to him, and parol evidence was inadmissible to control or vary the terms of the writing. In view of the purpose for which Moody's testimony was evidently offered, no error was committed in striking it out.

4. It is insisted that the court erred in requiring Moody to be cross-examined, over objection and exception, as to certain matters to which he had not theretofore testified. The bill of exeptions shows that this witness, on direct examination, identified the notes sued on, and stated that he sent them with other negotiable instruments to Nixon, from whom he received a draft in payment therefor. On cross-examination he was required to testify as to other matters, but as the bill of exceptions does not purport to contain all his testimony on direct examination, the error thus assigned is unavailing.

5. It is argued that, having taken an exception to the following part of the court's charge, an error was committed in giving it, to wit:

"I instruct you, gentlemen of the jury, that the indorsement on the notes in question, under the evidence in this case, plaintiff did not come into possession of the notes in controversy in due course, or in the ordinary and usual course of business as recognized by the law; and therefore that any defense which these defendants may have had against said notes, if in the hands of the indorsee, H. L. Moody, will be available to the defendants as against this plaintiff."

The uniform practice of merchants in transferring credits, represented by commercial paper, as a means of purchasing goods or settling accounts, gave rise to certain rules, demanded by the wants and convenience of trading communities, which are known as the law merchant, and have become a part of the common law: 7 Cyc. 520; *Woodbury* v. *Roberts,* 59 Iowa, 348 (13 N. W. 312: 44 Am. Rep. 685). An observance of these rules requires that the property represented by a promissory note, payable to order, when transferred to a designated party before maturity for a valuable consideration and without notice, should be evidenced by an indorsement on the instrument, or

on a paper attached thereto, in order to bar the equities of antecedent parties. This method of transferring such property constitutes the ordinary or usual course of business, a departure from which is equivalent to a notice of equities, and subjects the negotiable instrument to defenses in the hands of a holder who has acquired a right thereto in any other manner: Section 4433, B. & C. Comp.; Randolph, Com. Paper (2d ed.) § 789; *Roberts* v. *Hall,* 37 Conn. 205 (9 Am. Rep. 308) ; *Franklin* v. *Twogood,* 18 Iowa, 515; *Elias* v. *Finnegan,* 37 Minn. 144 (33 N. W. 330). In *Osgood's Adm'rs* v. *Artt* (C. C.) 17 Fed. 575, Mr. Justice Harlan, in discussing this subject, says:

"It is a settled doctrine of the law merchant that the *bona fide* purchaser for value of negotiable paper, payable to order, if it be indorsed by the payee, takes the legal title unaffected by any equities which the payor may have as against the payee. But it is equally well settled that the purchaser, if the paper be delivered to him without indorsement, takes, by the law merchant, only the rights which the payee has, and therefore takes subject to any defense the payor may rightfully assert as against the payee."

6. A transfer, without indorsement, of a promissory note payable to order, assigns to the holder, under the rules of the law merchant, only an equitable right, to enforce which suit was formerly required to be maintained in the name of the payee. Our statute demands that every action, except in certain cases not involved herein, shall be prosecuted in the name of the real party in interest: Section 27, B. & C. Comp. In *Moore* v. *Miller,* 6 Or. 254 (25 Am. Rep. 518), it was ruled that the holder of a note, payable to order, which has been transferred without indorsement, could maintain an action at law thereon in his own name. That decision, however, is not based on the section of the statute last referred to, but upon the fact that the evidence showed that the plaintiff therein possessed the title to the note sued on, and had the sole right to receive the money due thereon. As illustrating the right of a holder of a negotiable promissory note, transferred without indorsement, to maintain an action thereon in his own name, see the very able opinion of

Circuit Judge Gilbert in *First Nat. Bank* v. *Moore,* 137 Fed. 505
(70 C. C. A. 89). This legal principle is here adverted to
for the purpose of showing that Moody's testimony was excluded,
not on the ground of establishing a right in the plaintiff to
maintain an action in its corporate name, but to prove that the
bank was an indorsee, in due course, though not named in the
evidence of the transfer, nor was any fiscal designation appended
to the name of the indorsee from which it could be inferred that
the plaintiff was the party intended by the writing. The note
sued on having been delivered by Nixon, without indorsement,
to the plaintiff, the bank was authorized to maintain an action
thereon in its own name; but it took and held the paper subject
to all equities existing in favor of the makers, and this being
so, no error was committed in giving the instruction under
consideration.

7. It is contended that the court erred in refusing to set
aside the verdict and to grant a new trial, on the ground that
no contract had been consummated between Furnish and the
defendant, whereby the notes in question were to be canceled.
The rule is settled in this state that the action of a court in
granting or denying a motion for a new trial is not a final
order from which an appeal lies. This principle has so often
been announced that it is unnecessary to cite the cases which
uphold the doctrine.

8. It is argued that as all the testimony given at the trial has
been sent up a perusal thereof will conclusively show that no
contract was ever entered into between the makers and the payee
of the notes whereby they were to have been canceled, and hence
the judgment should be reversed, and a new trial ordered. An
appellate court is created to review errors alleged to have been
committed by lower courts in the trial of law actions, to which
rulings exceptions have been duly reserved. No determination
of a trial court can be reviewed on appeal, unless the question
has been distinctly presented to that tribunal for its action.
In the case at bar the court was not requested to give any in-
struction that involved a consideration of all the testimony, and

this being so, that exhibit attached to the bill of exceptions will not be examined.

Other alleged errors are assigned, but, believing them unimportant, the judgment is affirmed.          AFFIRMED.

---

Decided 28 January, rehearing denied 28 April, 1908.