Argued at Pendleton, October 28; modified December 17, 1929

## FLORENCE E. FINNEY ET AL. *v.* STANFIELD FRATERNAL ASSOCIATION ET AL.

(283 Pac. 415)

For appellants there was a brief and oral argument by *Mr. C. Z. Randall.*

For respondents there was a brief over the name of *Messrs. Peterson & Lewis* with an oral argument by *Mr. W. M. Peterson.*

BELT, J.  This is a suit to foreclose a mortgage given to secure the payment of seven promissory notes executed by defendant Stanfield Fraternal association in favor of Annie Webster, Florence A. Webster, and Florence E. Finney.  Six of these notes were for $1,000 each and one for $500.  All of them were dated Novem-

ber 1, 1921. The first note for $1,000 was due one year after date. Plaintiffs allege default in payment of the notes, with the exception of the first note of $1,000 due November 1, 1922, which is alleged to have been paid. The Stanfield Fraternal association admits the execution of the notes and its liability thereon, but denies payment of the $1,000 note in question. As to this note, it is alleged that, in November, 1923, it was sold and transferred to Anna M. Young. The fraternal association asked that she be made a party in order to have a complete determination of the controversy. An order having been made making her a defendant, she interposed an answer and cross-complaint alleging in substance that, on or about November 23, 1923, the note for $1,000 was purchased from the payees named therein and that she is now the owner and holder thereof.

The trial court entered a decree in favor of plaintiffs against the Stanfield Fraternal association in the sum of $5,500 together with interest, and attorney fees amounting to $550. It was further decreed that the intervener Anna M. Young have judgment against the Stanfield Fraternal association for $1,000, together with interest, and an attorney fee of $150. The intervener was also awarded costs against the plaintiffs. It was provided that the proceeds of the sale of the property on execution be applied proportionately to amounts due plaintiffs and the intervener Anna M. Young. Plaintiffs appeal from that portion of the decree in favor of the intervener and against their interests.

■ The decision of the case hinges on the question as to whether Anna M. Young purchased this note from an authorized agent of the payees. It is not

claimed that the sale was made by them directly or that they had knowledge of the transaction at the time of the alleged sale. Florence E. Finney, Annie Webster and Florence A. Webster resided in North Dakota. All of the notes were endorsed to the First National Bank of Fargo, North Dakota, for collection. The endorsements of Annie Webster and Florence E. Finney were made by W. H. Finney as attorney in fact. The endorsement of Florence A. Webster was made by her father who merely signed his initials, "C.E.W." The notes being payable at the Bank of Stanfield in Stanfield, Oregon, the Bank of Fargo, when the first note became due, forwarded it for collection. Correspondence arose between W. H. Finney, acting as agent for the payees, and M. R. Ling, secretary and treasurer of the Stanfield Fraternal association, also vice-president and director of the Bank of Stanfield, wherein payment of the $1,000 note was urged. It is quite evident that the association was in financial streets and was unable to pay the amount due on this note. A son-in-law of Anna M. Young, Frank Sloan, who was president of the association and an officer of the Bank of Stanfield, entered, as her agent, into negotiations with Ling to purchase the note in controversy. Ling claimed to be an agent of the payee having authority to sell the note to the intervener for the amount due thereon. To accomplish the transfer of the title to the note, he changed the original endorsement on the note by inserting the name "Anna M. Young" after the words "Pay to the order of" and by drawing a line through the words "First National Bank, Fargo, N. Dak." The endorsement, after the change was made by Ling, was as follows:

"Pay to the order of Anna M. Young
       ~~First National Bank, Fargo, N. Dak.~~
Annie Webster
Florence E. Finney (by
     W. H. Finney,
     Attorney in fact.
Florence A. Webster
     By C. E. W."

Ling also crossed out the endorsement of the First National Bank of Fargo which was: "Without Recourse Pay any Bank or Banker or Order. First National Bank of Fargo, N. D. G. W. Jenson, Cashier." Upon delivery of the note to her, Mrs. Young paid to the Stanfield Fraternal association $1,065.30, which was deposited to its account in the Bank of Stanfield. Ling, as treasurer of the association, drew a check in favor of the bank for such sum. On the lower corner of the check was noted, "B. P. 3." meaning bills payable. The bank, by cashier's check dated December 1, 1923, remitted such sum to the First National Bank of Fargo for the benefit of the payee. On August 23, 1923, W. H. Finney, who was pressing the debtor association for payment, wrote its secretary and treasurer, M. R. Ling, in part as follows: "If you can 'beg, borrow or steal' the part that is coming to us on your deal, I would very much appreciate if you would send it on at once." On November 30, 1923, Ling thus wrote to Finney:

"We today took up the $1,000 note that was at the Bank of Stanfield for collection, paying interest on same to December first.

"It has been like pulling hens teeth to get money enough together to take care of this note and the interest on the whole thing to Nov First."

Ling again, on December 20, 1923, in answer to Finney's letter of December 17, making inquiry as to

the remittance by the Bank of Stanfield, wrote: ''We paid the note for $1,000 and the interest to that date at the Bank of Stanfield, on November 30, by our check No. 135, for $1,065.30.''

We have searched the record in vain for any competent evidence tending to prove that Ling had authority to sell this note or thus to change the endorsement on it. He does not claim to have obtained authority directly from the payees or either of them. He predicates agency upon correspondence with agents of the payees appointed for the purpose of making collection. At this juncture it is well to observe that an agent who has authority to collect the amount due on a note has no implied authority to sell it. It does not appear to us to be reasonable that an officer of a debtor corporation, the maker of the note, would be delegated authority to sell it. Ling found it difficult to serve two masters. If, indeed, he was acting as agents of the payees, it was his duty to advise them of the alleged sale and not conceal anything affecting their interests. All the evidence tends to show that Ling was endeavoring to make his alleged principals believe that the fraternal association had paid the note. From the correspondence it also appears that Ling, an officer both of the bank and of the association, knew that the note was sent to the bank for collection. Knowing the purpose for which the note was sent, he was bound to know that neither he nor the bank had any authority to sell it. Sloan, also an officer of the bank and of the association, knew that the bank had the note for collection. Since he was admittedly acting as agent for Mrs. Young, his knowledge relative to the note is imputable to her. As a matter of law, she was not an innocent purchaser. It is fundamental that one dealing with a person pur-

porting to act as agent of another does so at his peril: *Graef v. Bowles et al.*, 119 Or. 498 (248 P. 1090). Ling certainly had no specific authority to sell this note nor did he have apparent authority so to do. There is not a scintilla of evidence indicating that any person was ever authorized so to act.

The conduct of Sloan and Ling in this transaction is reprehensible. Both of them were aware of the financial condition of the fraternal association and knew that the property described in the mortgage was inadequate security for the payment of the notes. Yet, if their testimony is to be believed, Mrs. Young, a widow 75 years of age, was induced to purchase this note. Sloan says he obtained legal advice as to the authority of Ling to transfer the title of the note to Mrs. Young. The record does not disclose what advice was given, but if he entertained any doubt as to the authority of Ling it could have been removed by making inquiry of the payees. When suit to foreclose the mortgage was threatened by the plaintiffs, Ling was requested to forward a certified copy of the note in question. In the copy of the note attached to his certificate, it is observed that he failed to disclose that he had drawn a line through the words, "First National Bank, Fargo, N. Dak." and made it appear that the endorsement read, "Pay to the order of Anna M. Young." At the time this certificate was made, the lips of W. H. Finney and C. E. Webster were sealed in death. During their lifetime Ling never contended that he was acting as agent for the payees and had authority to sell this note.

We further analyze the evidence upon which intervener relies to establish agency The letters above quoted written by Finney to Ling, were, in our opinion, in the nature of "duns." There is no indica-

tion of the appointment of an agent to sell, assuming that Finney had the authority to make such appointment. Ling testified that he "wrote to Mr. Finney requesting him to endorse the note in blank so we could sell it to some parties because we did not have the money at the time to take it up ourselves." The letter was not produced and secondary evidence was offered as to the contents thereof. Suffice it to say, however, that the note was not endorsed in blank. Sloan testified that Ling had represented to him that he was the agent of the Websters and that he had seen letters from them that made him know that Ling had the authority as their representative to sell this note. An agency can not be established by the declaration of the agent. The letters mentioned by Sloan were not produced and his testimony is inadmissible as being merely a conclusion of the witness. In response to the question, "Now, Mr. Ling, having had this correspondence right along with W. H. Finney, and knowing these payees or part of them as you did, did you honestly feel you had authority to negotiate this note with these people through the Bank of Stanfield to Mrs. Young?" answered, I certainly did." An agency can not thus be established. What Mr. Ling believed as to the extent of his authority is wholly immaterial.

If Mrs. Young actually purchased this note from Ling as agent of the payees, why was not her check made either to the payees or to Ling as their agent? Why was the money deposited to the credit of the Stanfield Fraternal association? It had nothing to sell. Why did Ling make on the check to the Bank of Stanfield the notation, "Bills Payable?" Why did he conceal from the payees the truth about the transaction? Why did Ling twice write to Finney that the note had been paid if, in fact, he had sold it to Mrs.

Young? Why did he make a false certificate when inquiry was made as to the endorsements on the note?

It is not contended that the bank sold this note to Mrs. Young. As counsel for respondents say: "* * * the plaintiffs placed the note, after endorsing it as requested by Mr. Ling, in the hands of W. H. Finney, their agent, and that he, through the First National Bank of Fargo, N. D., sent it to the Bank of Stanfield in order that Mr. Ling might dispose of it in some manner for the plaintiffs; that Mr. Ling thereupon, acting for the plaintiffs, did sell the note to Mrs. Young for $1,000; * * *"

■ In view of the special qualified endorsement, the Bank of Stanfield had apparent authority to sell this note, although it did not have actual authority so to do, for it must be borne in mind that it was sent to the bank for the purpose of collection. Under § 7826, O. L., when a note has been specially endorsed "the endorsement of such endorsee is necessary to the further negotiation of the instrument." So far as the bank is concerned, it is not a question of an irregular endorsement, but it is rather one of failure of endorsement.

■ It is suggested that, by virtue of § 7841, O. L., Mrs. Young acquired such title as the bank had in the note notwithstanding there was no endorsement of the note by the bank. Conceding that to be true, it does not follow that she acquired title to the note for the simple reason that the bank did not own the note but was merely acting as a collecting agency.

The case was tried upon the theory that Mrs. Young purchased the note from Ling, an authorized agent of the plaintiffs. It will not do for us on appeal to decide it upon an entirely different one, namely,

that Mrs. Young purchased the note from the bank, especially since there is no evidence tending to show that the bank sold the note.

We have carefully searched the record for evidence in this case to substantiate the claim of intervener as it is believed that she has been a victim of deceit and misrepresentation. Hard cases, however, should not make bad law. It would, indeed, be a dangerous rule to announce that a person to whom a note was forwarded for collection had the authority to sell the same. Since the payees obtained the money on the note in question, it is as to them a payment and an extinguishment of the note. Since Ling was not an agent of the payees, Mrs. Young did not deraign title from them, but, having furnished the money with which the fraternal association paid the note, it is deemed a reissuance of the note to her by the debtor corporation. She is not entitled to share proportionately in the proceeds of the property upon execution, but is entitled to any surplus which may exist after the proceeds of the sale have been applied to the amount due plaintiffs, together with attorney fees, expenses of sale, and costs and disbursements allowed plaintiffs against the fraternal association in this foreclose proceeding. It is not deemed equitable to award plaintiff's costs and disbursements against the intervener, Anna M. Young.

The controversy between counsel relates to the facts and not to the law of the case. Hence this opinion is practically void of authorities.

The decree of the lower court directing the foreclosure of the mortgage and sale of the property on execution is affirmed with the modification above noted.

The cause is remanded with directions to proceed not inconsistent with this opinion.

MODIFIED.

COSHOW, C. J., concurs in the result.

BEAN, J., dissenting. In this suit it appears that on November 1, 1921, the defendant, Stanfield Fraternal association, a corporation, executed to the three plaintiffs, Annie Webster, Florence A. Webster and Florence E. Finney, six negotiable promissory notes, each for the sum of $1,000. The first was payable November 1, 1922, and the others annually on the first of November each year until 1927; also one note for the sum of $500, payable November 1, 1928. At the same time they executed a mortgage in favor of the payees upon certain real estate in the city of Stanfield, Umatilla county, Oregon, to secure the payment of such notes. The notes were each indorsed by the payees as follows: "Pay to the order of the First National Bank, Fargo, N. Dak." signed by two of the payees, by their attorney-in-fact, and one by her agent.

About the time the first note matured the Bank of Fargo indorsed the note of $1,000, due November 1, 1922, as follows:

"Without Recourse PAY ANY BANK OR BANKER, or order.

(Signed) First National Bank of Fargo, N. D., G. W. Jensen, Cashier,"

and forwarded the note to the Bank of Stanfield, at Stanfield, Oregon, where the note was payable for collection.

The note not being paid when due, in November, 1923, Mrs. Anna M. Young, the intervener, purchased the note through Frank Sloan, her son-in-law and agent, paying into the Bank of Stanfield the amount

of the note and interest, amounting to $1,065.30. The bank turned the note over to Frank Sloan for Mrs. Young and he delivered the same to her. The note at the time was indorsed as it now is. However, it was not regularly indorsed. Instead of the Bank of Stanfield indorsing the note, which was payable to its order, in accordance with the indorsement of the First National Bank of Fargo, one M. R. Ling, an officer of the bank, struck out the name "First National Bank, Fargo, N. Dak." by running a line through the same, and inserting the name of "Anna M. Young." Mrs. Young retained the note and the Stanfield Fraternal association paid interest thereon to her for some time.

The Stanfield Fraternal association failed to pay any of the notes and on May 24, 1927, the payees commenced this suit in the circuit court for Umatilla county to foreclose the mortgage and for judgment for the amount of all the notes, except the first one due November 1, 1922, alleging that the latter note had been paid. Mrs. Anna Young intervened in the suit and filed a cross-complaint, in which she claimed the note was sold to her by the payees, asking a judgment on the note of $1,000 and interest, also that the mortgage be foreclosed and that her judgment be paid first from the proceeds of sale.

A reply and answer to the cross-complaint of Mrs. Young was filed putting in issue the material allegations of the cross-complaint. The testimony was taken before the official reporter, as referee, and submitted to Circuit Judge J. W. Knowles, who rendered a decree foreclosing the mortgage and granting a judgment against the defendant Stanfield Fraternal association in favor of the intervener, Anna M. Young, for the sum of $1,000, with interest from November 1,

1927, and attorney's fees, and ordering the real estate to be sold and the proceeds of sale be applied proportionately to the amounts due the plaintiffs and intervener, Anna M. Young.

The plaintiffs, being dissatisfied with the decree, have appealed from that part of the decree in favor of the intervener. It is the claim and contention of the plaintiffs that the note in question, for $1,000, due November 1, 1922, claimed by intervener, Mrs. Anna M. Young, was paid and that no one who dealt with the note had authority to transfer the same to Mrs. Young.

The depositions of the payees of the notes, who are now living, were taken and their indorsement to the Bank of Fargo, is admitted, and the indorsement of the Bank of Fargo to any bank or banker, or order, and the sending of the note to the Bank of Stanfield is not questioned.

We have then for consideration a note transferred to the intervener for its full face value after the note was due without a regular indorsement. It may be well to state that, in so far as the testimony shows, there was no wrong intended in the irregular indorsement of the note to Mrs. Young. Instead of the bank indorsing it in a regular way, a short cut was taken and Mrs. Young's name inserted as stated.

It is the contention of the plaintiff, as we understand the record, that the payees of the note never authorized the Bank of Stanfield, or any one, to transfer the note to Mrs. Young, or to any one. The suit appears to have been tried upon the theory that the note was transferred to Mrs. Young, or claimed to be, by or through an agent other than the Bank of Stanfield.

In regard to the claim of the plaintiffs that no authority was given by the payees of the note for a transfer of the note in question, we first notice the written indorsement of the plaintiffs and also the one made by their authority by the First National Bank of Fargo. When Mrs. Young purchased the note she, by her agent, Frank Sloan, who was an an officer of the Bank of Stanfield, was allowed to take the note and present the same to attorneys at Pendleton in order to ascertain the regular status of the note and if Mrs. Young could legally purchase the same.

The note was then indorsed by the payees "Pay to the order of the First National Bank of Fargo, N. Dak." and also the indorsement of the Bank of Fargo, "Pay to any bank or banker, or order." We, therefore, see no reason for entering the realm of the oral testimony in regard to the authority given by the payees of the note to the First National Bank of Fargo, or to the Bank of Stanfield. The authority is plainly in writing, authorizing the note to be paid to the order of the Bank of Stanfield. This is not questioned by plaintiffs, except in so far as their conclusions differ therefrom.

We will, therefore, consider the transfer to Mrs. Young, and, first, without considering that the note was indorsed to her in any manner. § 7841, O. L., provides in regard to the effect of a transfer of a negotiable instrument without indorsement, as follows:

"Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferrer had therein, and the transferee acquires, in addition, the rights to have the indorsement of the transferrer; but for the purpose of determining

whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made.''

It is the rule, especially in this state, that the transfer without indorsement of a promissory note, payable to order, assigns, under the law merchant, only an equitable right, which could be enforced by suit in the name of the payee only; but under § 27, O. L., providing that every action, with certain exceptions, not pertinent here, shall be prosecuted in the name of the real party in interest, a person may maintain an action in his own name on a note transferred to him without indorsement: *First National Bank v. McCullough,* 50 Or. 508 (126 Am. St. Rep. 758; 17 L. R. A. N. S., note, 93 P. 366); *Simpson v. First National Bank,* 94 Or. 147 (185 P. 913).

In this suit there are no equities, or defenses to the note by the makers to be taken into consideration. Any assignment of the note to Mrs. Young that would pass an ordinary chose in action was sufficient to transfer the note and authorize her to maintain the suit. She bought the note in good faith and paid the full face value therefor and is entitled to maintain the suit, and the decree of the circuit court, while perhaps based upon a different reason than the one to which we have referred, and the case was tried upon a somewhat different theory, should be affirmed.

The case of *First National Bank v. McCullough,* supra, appears to be a leading one by the note to that case in 17 L. R. A. N. S. The rule therein enunciated has never been changed, but has been followed in this state. A mere fact that there was an irregularity in the indorsement of the note to Mrs. Young, or no indorsement at all, should not mitigate against her equitable right in a suit where equity will hold that

to be done which ought to be done: *Simpson v. First Nat. Bank,* supra; *Farmers Loan & Trust Co. v. Brown,* 182 Iowa, 1044 (165 N. W. 70); *Hughes v. Nelson,* 29 N. J. Eq. 547, 550.

As stated in I Daniel on Neg. Instruments, § 664, (a) quoted from in note to *Bank v. McCullough,* 17 L. R. A. N. S., at 1106, "the transferee without indorsement takes it as a mere chose in action, and must aver and prove the consideration; and he takes it subject to all equities that attached to it in the hands of his transferrer."

We read in that note as follows:

"Under the general rule as given above, there can be no question but that a note transferred by the payee without indorsement is subject, in the hands of the transferee or any subsequent holder, to all the equities existing in favor of the maker against the payee."

The Stanfield Fraternal association never paid a cent upon the note in question, except interest. It never had the right to the possession of the note, or the right to do anything in regard thereto, except to pay the same.

It is claimed in this case that, after the transfer of the note to Mrs. Young, the Stanfield Fraternal association, through one M. R. Ling its officer, wrote to the agent of the payees, saying, among other things, in effect, that they had taken up the note, and that such statement indicated that the note had been paid. Whatever the Stanfield Fraternal association, or any of its officers, saw fit to write to the plaintiffs, could not by any stretch of imagination bind or affect Mrs. Young, and, as we view it, this testimony was immaterial.

Frank Sloan was president of the Stanfield Fraternal association. It would appear that the only interest that the association had was to have it so arranged that they would have time to pay the note. Ling, at that time, by his letter evidently desired to bolster up, to a certain extent, the credit of the association.

There is a wealth of discussion of authorities in the brief of plaintiffs in regard to the proof of an authority of an agent, which we see no good reason to consider, as the indorsements on the note were in writing, plainly making the note payable to the order of the Bank of Stanfield, which in equity and good conscience should have indorsed the note to Mrs. Young. It might have been done without recourse and without costing the bank a cent. See *Simpson v. Bank,* supra.

The plaintiffs argue, in effect, that they transferred the note to the Bank of Fargo and it in turn sent the note to the Bank of Stanfield simply for collection; but they did more than that—by their indorsement they made the note not only payable to the Bank of Fargo but to its order. That bank, and its acts are not questioned by plaintiffs, made the note payable to the order of the Bank of Stanfield.

It is claimed by plaintiffs that their letter showed that the note was banked for collection only. Any secret instruction that plaintiff may have given to the bank, about which Mrs. Young knew nothing, could not affect her rights.

It appears that about the time the note was due the plaintiffs were taking over some property and had a large tax to pay in completing the arrangement. They were anxious to obtain the money on the note and wrote directly to the Stanfield Fraternal association.

On August 23, 1923, the payee's agent, W. H. Finney, wrote "M. R. Ling, Stanfield Fraternal Ass'n." in regard to the notes in part, thus: "If you can 'beg, borrow or steal' the part that is coming to us on your deal I would very much appreciate it if you would send it on at once."

Frank Sloan, Mrs. Young's son-in-law and agent, testified in regard to the note, in part, that he got the money for Mrs. Young and left the $1,065.30 at the Bank of Stanfield. He stated:

"And I went to Echo, and got the money from Mrs. Young in a C. D. She had certificates of deposit in the Bank of Stanfield, in the amount of $1,250. When I returned to the Bank, this note had been indorsed as it is now, 'Pay to the order of Anna M. Young,' and I took this note and the $250 note to Echo and turned it over to Mrs. Young."

The Bank of Stanfield forwarded the money by a cashier's check to the Bank of Fargo for the plaintiffs.

Ling, being a viec president and director of the Bank of Stanfield and also an officer of the Stanfield association, complicated the matter and caused some misunderstanding, as it appears that after Sloan left the money at the bank it was placed to the credit of the Stanfield Fraternal association and then a check was drawn by the association in favor of the bank for the amount. This was a mere matter of bookkeeping and did not change the real transaction. As stated, the Stanfield Fraternal association had no right to the money or the note.

There is no ttestimony indicating that the note was ever paid by the Stanfield Fraternal association, except as to the interest. Ling was first called as a witness for plaintiff and then by Mrs. Young. He was asked this question and gave the following answer:

"Do you mean that the Stanfield Fraternal association sold the note to Mrs. Young? Ans. They did not."

It is suggested that the Stanfield association paid the note and reissued it to Mrs. Young. This could not have been done as the association never paid the note or had the right of possession thereof, or to the money paid by Mrs. Young. Whatever Ling could legally do in regard to the transferring of the note must have been done by virtue of his authority as an officer of the Bank of Stanfield, notwithstanding how he, in his wisdom, might have considered the matter.

The payees of this note enclosed it and sent it out into the commercial world and Mrs. Young bought it. Plaintiffs ought not to complain. If any mistake or misunderstanding arose it was the fault of plaintiff's bankers acting for them.

Mrs. Young was the owner and holder of the note, as she alleged in her cross-complaint. She paid the full amount therefor. The equities are all with her. She is entitled to her proportionate share of the mortgage property.

The decree of the circuit court should be affirmed.

HAMILTON, Acting J., concurs in this opinion.