looked to ascertain whether a car was far from or near to him. He showed nothing from which it could be inferred that he took any care whatever to avoid danger. So far as appears from the testimony in the case, the car, at the very moment the plaintiff took up his position four or five inches from the west rail, may have been so near him that it would have been absolutely impossible for the motorman to have stopped it in time to prevent injury. While it has been held that persons engaged upon the streets in public service are merely bound to use reasonable care to avoid the dangers by which they are beset, the cases have not gone as far as to hold that such persons need exercise no care whatever. The witnesses called to corroborate the plaintiff do not aid him in this respect, as neither of them testifies that they saw him before he was struck by the car.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event. All concur.

---

(42 Misc. Rep. 341.)

### MEUER v. PHENIX NAT. BANK.

(Supreme Court, Trial Term, New York County. January, 1904.)

1. CHECK—TRANSFER BY PAROL.

   Where a check is drawn to order, it can be transferred by delivery and parol, and the lack of an indorsement only renders the check not negotiable, and subject to equitable defense.

2. SAME—CERTIFICATION—LIABILITY OF BANK.

   Where a bank, at the request of a bona fide holder for value, certifies a check drawn to order, and there are no equities between the maker and the bank, the holder can recover of the bank, though the maker has not indorsed the check to him.

Action by Max Meuer against the Phenix National Bank. Verdict for plaintiff. Motion for a new trial. Denied.

Lawrence Goldberg, for plaintiff.

Masten & Nichols (Benjamin N. Cardozo, of counsel), for defendant.

CLARKE, J. Motion to set aside a verdict and for a new trial. On December 12, 1901, one Arthur Johns, who had been the attorney of Mrs. Edla M. Meuer and had collected certain moneys for her, which he had deposited to his own account in the Phenix National Bank, delivered to her his check for $1,303.65, drawn to her order on said bank. On December 28, 1901, Mrs. Meuer transferred and delivered said check for a valuable consideration to the plaintiff, her brother-in-law. She was sick at the time and omitted to indorse the check. Before this omission could be supplied she died, on the 29th of December, 1901. The evidence was conclusive that the transaction was bona fide, and that the transfer of the check was with full knowledge and for full consideration, and sustains the verdict. Plaintiff thus became the holder of the check for value. There is abundant authority that title to a check, like title to any other chose in action, can be transferred without indorsement, and by delivery and parol. It ceased, however, to be a negotiable instrument. The effect of this, however, would be simply to admit of an inquiry into the equities. But there are no

equities as between the maker, Johns, and the payee, Mrs. Meuer. He owed the money represented by the check to her. It was her money, which he had collected for her and undertook to pay to her. He has no interest whatever in it, and sets up none. Nor are there any equities between Mrs. Meuer and plaintiff, as she received full value for the check on its transfer by her. On January 18, 1902, the check was presented to defendant by a messenger from the holder, the plaintiff, for certification, and was duly certified. Payment was subsequently demanded and refused, and this action was brought.

The defendant claimed that it had received a notice from the maker, stopping payment, on December 30th, and that its certification thereafter on January 18th was due to forgetfulness upon the part of its officers, that such a notice had been received. It was a question of fact as to whether any such notice had been sent to or received by it, and this question was resolved against it by the jury on conflicting evidence, the jury finding no such notice had been received at the time claimed. The only reason suggested by Johns for sending the notice, as claimed, was that he feared the check had come into the hands of plaintiff improperly. There is not a scintilla of evidence to sustain this theory, and it is settled to the contrary by the verdict. The jury found also that, after the certification, the conditions had changed, to the detriment of the plaintiff. In the first place, he had filed a claim against the estate for $5,000, which was admitted to be valid, instead of $6,300, which was due him without the check, and, having the certified check, had settled said $5,000 claim for $3,000. This was sustained by uncontradicted evidence. So that we have all these questions of fact settled by the jury, and the verdict is fully supported: First. Plaintiff is the bona fide holder for value of the check. Second. It was duly certified by the bank for the holder before receipt of the stop order. Third. That plaintiff's position has materially changed, to his detriment, by reason of said certification. Therefore there is left for consideration solely a question of law.

Section 323 of the Negotiable Instruments Law, Laws 1897, p. 756, c. 612, provides:

"When a check is certified by the bank on which it is drawn the certificate is equivalent to an acceptance.

"Sec. 324. When the holder of a check procures it to be accepted or certified the drawer and all indorsees are discharged from liability thereon.

"Sec. 325. A·check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank and the bank is not liable to the holder, unless and until it accepts or certifies the check."

The bank claims that its certification, while it concedes it was an acceptance, was an acceptance to pay the check according to its terms, that is, to the payee named therein, and that that payee must have transferred title by indorsement thereon, and that in the absence of indorsement it cannot be compelled to pay. In Freund v. Importers' & Traders' Nat. Bank, 76 N. Y. 357, Judge Folger, speaking for an unanimous court, said:

"Doubtless there should have been upon the check the written indorsement of the payees, to have saved to it, in the hands of Blun, its original character and quality of negotiable paper. Having been transferred without indorsement, Blun got the right only that he would have taken had it been not nego-

tiable at the start. \* \* \* The effect of the transfer of the check, it having been without written indorsement, was no more than that the drawers of it had such right to refuse or prevent payment of it as a maker of a nonnegotiable instrument would have had under the same state of facts. Grant that such right was so much as that it would prevail against every one but an innocent transferee for a good consideration. \* \* \* Before notice to stop payment, the defendant, on the presentation of it by Blun, had certified it as good. If Blun & Sons were then the holders and owners of it, with such right as that they could enforce it against the makers, the certification of it by the defendant had all the legal effect which the same certification would have had, had it been indorsed by the payees. That legal effect is the same as if the defendant had paid the money upon it, with the proper indorsement upon it of the payees. By the certification of a negotiable check, properly negotiated, the depositary of the fund checked upon becomes liable to the owner of the certified paper, and is bound to have in readiness the money to meet it from the fund drawn upon. When the check is not negotiable, or has not been indorsed, but has by assignment come into the hands of a lawful owner, who has a right to enforce it against the maker, the effect is the same."

This case has been cited with approval in Lynch v. First Nat. Bank, 107 N. Y. 179, 13 N. E. 775, 1 Am. St. Rep. 803, Ruger, Ch. J., saying:

"It was held, in Freund v. Importers' & Traders' Bank, that a certification by the bank of a check in the hands of a holder, who had purchased it for value from the payee, but which had not been indorsed by him, rendered the bank liable to such holder for the amount thereof. By accepting the check the bank took, as it had the right to do, the risk of the title which the holder claimed to have acquired from the payee. In such case the bank enters into contract with the holder by which it accepts the check and promises to pay it to the holder, notwithstanding it lacks the indorsement provided for, and it was accordingly held that it was liable on such acceptance, upon the same principles that control the liabilities of other acceptors of commercial paper."

But that case was distinguished from the Freund Case solely on the ground that the certification was at the request of the drawer of the check, and was therefore subject to the condition imposed by him, plainly written in the check, that it should not thereafter be payable except by his indorsement. It was also held:

"Where a depositor has imposed the condition that his check shall not be paid without it bears his indorsement, the depository, if it pays it to a holder without such indorsement, runs the risk of the transaction, and takes the burden of showing that such holder has acquired in some way the lawful title to receive the funds. It may successfully defend such a payment if it can show that it made it to a person who, as against the drawer, was legally entitled to receive it, for, in that event, the drawer would suffer no damage thereby."

And concluded:

"We are of the opinion that the evidence in this case did not authorize the trial court to find that Wilder [the maker who drew the check to his own order, had it certified himself, and delivered it without indorsement] intended to transfer any part of his deposit to the plaintiff, and there is no other theory upon which the action can, under the evidence, be maintained."

The Freund Case was again cited in Goshen Nat. Bank v. Bingham, 118 N. Y. 349, 23 N. E. 180, 7 L. R. A. 595, 16 Am. St. Rep. 765, as the established law. It was distinguished, however, upon the following facts: Brown, the drawer of the check, committed a gross fraud upon the bank by depositing worthless bonds, accompanied by a sight draft. He was a bankrupt, and had no funds in the bank, except such as resulted from the credit given him upon the faith of the draft accompanied by the bonds. He himself procured the check, drawn by himself

704    86 NEW YORK SUPPLEMENT    (Sup. Ct.

and 120 New York State Reporter

to his own order, to be certified, and delivered it unindorsed. The holder brought suit. The court said:

"As against Brown, to whose order the check was payable, the bank had a good defense. * * * The plaintiff had notice of the fraud, which constituted a defense for the bank as against Brown. * * * Prior to the indorsement of this check, therefore, plaintiff was subject to the defense existing in favor of the bank as against Brown, the payee."

Then the case proceeds:

"The bank did certify that it had the money, would retain it, and apply it in payment, provided the check should be indorsed by the payee."

Thus both of those cases reassert the doctrine of the Freund Case, that, when a check in the hands of a bona fide holder for value has been certified by a bank, at the holder's request, and is a valid obligation against the maker, and there are no equities between the maker and the bank, recovery can be had of the bank, even if the transfer is not evidenced by indorsement. As it appears from the evidence in this case that plaintiff is the bona fide holder for value of the check; that the holder procured its certification; that there are no equities as between the maker and the original payee; that the bank has the funds of the maker locked up in its possession, as called for by its certification; that no demand has been made or suit brought by said maker for said funds; that there are no equities between it and the maker; and that, the title to the check having been established in the plaintiff, it would have a perfect defense against any suit brought by said maker against it—I conclude that the case falls within the Freund Case in all particulars, that that case still presents the law of this state, and that the motion must be denied and judgment entered on the verdict. In view of all the circumstances of this case, 5 per cent. allowance, 30 days' stay, 30 days to make a case.

Ordered accordingly.