## TOWN OF FLETCHER v. HICKMAN.

(Circuit Court of Appeals, Eighth Circuit. November 23, 1908.)

### No. 2,703.

1. JUDGMENT (§ 900*)—JUDGMENT AS CAUSE OF ACTION.

   A judgment creditor may maintain an action against the debtor on his judgment, the right to collect it by execution or other process being merely cumulative.

   [Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1719; Dec. Dig. § 900.*]

2. EVIDENCE (§ 5*)—JUDICIAL COGNIZANCE—NOTORIOUS FACTS.

   Courts take judicial cognizance of notorious facts, familiar to common experience and observation.

   [Ed. Note.—For other cases. see Evidence, Cent. Dig. § 4; Dec. Dig. § 5.*]

3. EVIDENCE (§ 586*)—NEGATIVE TESTIMONY.

   Negative testimony is valueless, unless it appears that the witness was so circumstanced as to be reasonably likely to have some knowledge on the subject.

   [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2433. 2434; Dec. Dig. § 586.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. MUNICIPAL CORPORATIONS (§ 122*) — ORDINANCES—PUBLICATION—NEGATIVE TESTIMONY.

Under Mills' Ann. St. Colo. 1891, § 4443, providing that municipal ordinances shall be recorded in a "Book of Ordinances," which record shall be prima facie evidence that the ordinances were duly published as provided by law, which requires their publication in some newspaper published within the corporate limits of the municipality or, if none, in one of general circulation therein, the burden resting on a town having no newspaper to prove that an ordinance authorizing an issue of bonds and so recorded was not duly published is not sustained by a general statement of a witness that he moved into the town some years after the issuance of the bonds and that there had been no newspaper of general circulation therein "at any time since its incorporation."

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 289; Dec. Dig. § 122.*]

5. MUNICIPAL CORPORATIONS (§ 947*)—BONDS—BONA FIDE HOLDERS.

A purchaser of municipal bonds from a prior bona fide purchaser for value before maturity takes the rights and standing of his vendor.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1982; Dec. Dig. § 947.*

Bona fide purchaser of municipal bonds, see note to Pickens Tp. v. Post, 41 C. C. A. 6.]

In Error to the Circuit Court of the United States for the District of Colorado.

William A. Bryans (Guy Le R. Stevick and L. Ward Bannister, on the brief), for plaintiff in error.

William P. Malburn (C. S. Thomas and W. H. Bryant, on the brief), for defendant in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and PHILIPS, District Judge.

ADAMS, Circuit Judge. This was a suit in two counts: One to recover the amount of a former judgment rendered by the court below in favor of the plaintiff, Hickman, against the town of Fletcher, the defendant below, and the other to recover the amount due on coupons detached from 69 certain bonds issued by the town of Fletcher and belonging to plaintiff, Hickman. The Circuit Court directed a verdict and rendered a judgment for the plaintiff on both counts, and this writ of error is to secure a review of that action.

It is first objected that a suit does not lie on a judgment as long as the holder can enforce it by execution issued thereon in due and usual course. It is said that to permit a second judgment at the pleasure of the judgment creditor is unnecessarily harassing and vexatious to the judgment debtor. This view finds support in a few cases, but the general and almost universal rule is otherwise. 2 Freeman on Judgments, § 432; 2 Black on Judgments, § 958, and cases cited; Gaines v. Miller, 111 U. S. 395, 4 Sup. Ct. 426, 28 L. Ed. 466; Hickman v. Macon County (C. C.) 42 Fed. 759. The right to enforce payment of a judgment by process of execution is merely cumulative. The obligation of the judgment debtor is to pay the judgment when rendered. If he fails to perform the obligation, no reason is

perceived why the judgment creditor may not resort to the courts of the land to enforce it. If the judgment debtor desired to escape the vexation and annoyances of successive suits, it is pertinent to suggest that he had it in his power to do so, and at the same time save his creditor from greater vexation and annoyance, by discharging his obligation and paying his debt when due. There was no error in directing a verdict on the first count.

It is next contended that the ordinance of the town of Fletcher which purported to authorize the issue of bonds from which the coupons in controversy came is invalid because not published as required by law, and that the plaintiff Hickman was not an innocent holder for value of the bonds. The validity of this issue of bonds has been passed upon by this court in a former suit between these parties to recover on other unpaid coupons taken from them. Town of Fletcher v. Hickman, 136 Fed. 568, 69 C. C. A. 350. In that case this court considered the present contention of the town relating to the invalidity of the ordinance. One of the vital contentions then considered and upon which the town now chiefly relies was that the ordinance authorizing the issue of the bonds was not published as required by law. The act of the General Assembly of Colorado approved April 4, 1877 (Laws 1877, p. 874), as amended by the act approved March 2, 1887 (Laws 1887, p. 443), found in Mills' Ann. St. Colo. 1891, vol. 2, § 4364 et seq., authorized towns and cities by ordinance to contract an indebtedness and issue bonds for the purpose of acquiring a system of waterworks. Section 4443 of the Statutes provided that all such ordinances—

" * * * shall be published in some newspaper published within the limits of the corporation, or if there be none such, then in some newspaper of general circulation in the municipal corporation, * * * provided, however, that if there is no newspaper published within or which has a general circulation within the limits of the corporation, then and in that case, upon a resolution being passed by such council or board of trustees to that effect, such by-laws and ordinances may be published by posting copies thereof in three public places, to be designated by the board of trustees, within the limits of the corporation; and such by-laws and ordinances shall not take effect and be in force until the expiration of five days after they have been so published or posted. But the Book of Ordinances herein provided for shall be taken and considered in all courts of this state as prima facie evidence that such ordinances have been published as provided by law."

This court has held (National Bank of Commerce v. Town of Granada, 54 Fed. 100, 4 C. C. A. 212), construing the Colorado Statutes, that the publication of an ordinance authorizing the creation of an indebtedness and issue of bonds for the purposes contemplated in this case was an essential prerequisite to the validity of the issue, and such is assumed by counsel to be the law applicable to this case. The contention on the part of the town is that, conceding an ordinance to have been duly passed, there was no lawful publication of it, and, as a result, the bonds issued by authority of the ordinance are void.

The bonds in question bore date July 1, 1891, and, to prove in the former case that there was no designation of three public places by the board of trustees for the posting of the ordinance, defendant introduced in evidence copies of the town records covering the period from

the incorporation of the town until and inclusive of July 1, 1891. These records disclosed that the board took no action designating places for posting the ordinance prior to the date of the bonds, but this court on the former appeal held that, inasmuch as the date of bonds is not necessarily or usually the accurate date of their issue, lawful posting of the ordinance might have occurred after July 1, 1891, and inasmuch as the burden of showing the failure to publish was on defendant, it had not borne the burden. To supply the proof thus shown to be lacking the contest is renewed in this second suit on coupons of the same issue of bonds, and defendants have proved that the bonds in question were actually issued and emitted on July 1, 1891, and that there was no order of the board of trustees authorizing the posting of the ordinance prior to that time. Upon making this proof defendant now contends that the gap is closed, and that it appears that the ordinance was never published and is therefore void.

We are unable to agree with this contention. Publication of the ordinance by posting was a resort permissible only when no newspaper was published or in general circulation within the limits of the corporation. Whatever may be the proof with respect to the publication of a newspaper within the town of Fletcher, there is none which fairly tends to show that there was no newspaper which generally circulated in that town. We must take judicial cognizance of the fact that the four sections of land constituting the territorial area of the town of Fletcher lie contiguous to the city of Denver, and that the city in 1890, according to the census report of that year, had a population of 106,-000. We may also take judicial cognizance of the notorious facts familiar to common experience and observation that there was within the city the usual provision for urban life, comfort and enjoyment like market houses, water and light supply companies, railroads and other means of locomotion affording communication with the outside and surrounding country; and also that the city had a daily press consisting of newspapers of a general circulation, at least throughout its limits. Baker v. Duncombe Mfg. Co., 146 Fed. 744, 77 C. C. A. 234, and cases cited. In such circumstances it is incredible that no newspaper ever got into general circulation in the neighboring town of Fletcher. Such, however, might have been the case, and to prove it a Mr. Harris was produced as a witness for defendants. He swore that he had resided in the town of Fletcher for 12 or 14 years; that he moved into the town in 1894, 3 years after the events now being considered; and, without having disclosed any facts showing that he had any information or was so circumstanced that he could have any information on the subject, the following broad and all-embracing question was asked: "Q. Was there any newspaper of general circulation in the town of Fletcher at any time since its incorporation?" This question was propounded to him at the time of the trial below, in 1907. His answer was equally broad and all-embracing: "No, sir." He affirmed that at no time since 1891 up to 1907, when he testified, was there a newspaper circulating generally in the town. This was all the testimony produced to establish the required negative. Testimony like this has been repeatedly pronounced by this court of no value. Chi-

cago & N. W. Ry. Co. v. Andrews, 130 Fed. 65, 64 C. C. A. 399; Rich v. Chicago, M. & St. P. Ry. Co., 119 Fed. 79, 78 C. C. A. 663. Notwithstanding the evidence of this witness, which is all that the town relied upon, the ordinance authorizing the issue of the bonds may well have been published in some newspaper of general circulation in the town, and the burden was on the town to prove that it was not.

The ordinance was duly recorded in the "Book of Ordinances" provided for by section 4443. That fact constituted prima facie evidence of its lawful publication. The statute conferring that prima facie effect was dictated by a wise public policy. New towns and cities of Colorado required for their proper development the construction of public buildings, sewers, waterworks, gas plants, bridges, and other like public utilities; and necessity frequently dictated that the cost of such improvements should be made a burden upon the future as well as the present. Proof of the publication or posting of ordinances required for their lawful authorization might after the lapse of years be difficult. The successful accomplishment of public enterprises, dependent largely upon the ability to borrow money for the purpose, required some readily available and reliable method of proving compliance with conditions precedent to the validity of bonds to be issued as evidence of the loan. For reasons like these, the statutes of the state made the record of an ordinance in the "Book of Ordinances" to be kept for that purpose prima facie evidence of its lawful publication. In view of these facts, courts ought not to permit this salutary presumption of regularity to be overcome by anything less than substantial proof of irregularity. There was no proof of it in this case, and the trial court rightly directed a verdict for plaintiff on the second count.

But it is said that defendant offered to make proof of failure to publish the ordinance, and that the court rejected such offer, and in so doing erred. After witness Harris had been examined, cross-examined, and re-examined, with no other result than as indicated, the court intimated that that evidence was not sufficient to authorize a submission of the issue to the jury. Thereupon defendant's counsel, without offering any other witness, made the following offer:

"The defendant offers to prove from the records in the former case, and under the stipulation filed in this case, that at all times between the day of the formation of the town of Fletcher and the date of the actual emission and issue of the bonds in controversy in this case, that there was no newspaper published within or which had a general circulation within the limits of the corporation, * * *" etc.

Assuming, for the present purpose only, that this wholesale offer to prove was proper practice, and one upon which error could be predicated, attention is called to the fact that the offer was to prove "from the records in the former case" under the stipulation filed in this case permitting use of that record. That record has been exhaustively examined, and is found to contain no further evidence on the subject concerning which the offer of proof was made than that already considered. Nothing appears in this record justifying any different result than that reached when the case was here before.

In view of the conclusion just stated, it is unnecessary to consider whether Hickman was an innocent holder for value of the bonds in

controversy; but as that question was argued and may arise at some other time, we may properly dispose of it now. The undisputed proof is that Hickman acquired his bonds from the Denver Savings Bank, which was an innocent purchaser and bona fide holder thereof before maturity. In such circumstances the bank passed its title to its vendee, and the latter is not affected by proof that he was acquainted with facts constituting a defense to the bonds at the time he purchased them. He is entitled to stand in the shoes of his vendor. Whatever rights the bank had he may assert in this action. Gamble v. Rural Independent School District, 146 Fed. 113, 76 C. C. A. 539, and cases cited.

The judgment must be affirmed, and it is so ordered.