SMITH v. NELSON LAND & CATTLE CO. †

(Circuit Court of Appeals, Eighth Circuit. March 3, 1914.)

Nos. 4028, 4029.

1. CORPORATIONS (§ 467*) — POWERS — NOTES — EXECUTION — ACCOMMODATION MAKER.

A land and cattle corporation had no power to become an accommodation maker of certain notes.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1831; Dec. Dig. § 467.*]

2. COURTS (§§ 366, 372*)—FEDERAL COURTS—RULES OF DECISION—STATE STATUTES—NEGOTIABLE INSTRUMENTS LAW.

While a federal court, in an action on certain notes, is not bound to follow the view expressed by the highest state tribunal on the question of negotiability of certain notes when dependent on general principles of the law merchant, yet where such question is governed by a negotiable instruments law adopted by the state, the federal court is bound to give force and effect to the statute if applicable.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968, 977–979; Dec. Dig. §§ 366, 372.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

3. BILLS AND NOTES (§ 146*)—NEGOTIABLE INSTRUMENTS LAW—EFFECT.

Gen. St. Kan. 1909, § 5254, providing that instruments, to be negotiable, must be in writing and signed by the maker or drawer, must contain an unconditional promise or order to pay a sum certain in money, must be payable on demand or at a fixed or determinable future time, and must be payable to order or to bearer, did not change the common law merchant as to the fundamental requirements of negotiable instruments.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. § 361; Dec. Dig. § 146.*]

4. BILLS AND NOTES (§ 155*)—NEGOTIABILITY—TIME OF PAYMENT—EXTENSION PROVISIONS.

Where certain notes provided that "sureties" consented that time of payment might be extended without notice thereof, such provision did not apply to any party signing the notes, and, there being no persons to whom it did apply, the presence of the clause did not render the notes nonnegotiable.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 407–410; Dec. Dig. § 155.*]

5. BILLS AND NOTES (§ 155*)—NEGOTIABILITY—MORTGAGES.

Where certain notes negotiable in form were secured by a mortgage, their negotiability was not destroyed by a provision of the mortgage that in the event of certain contingencies the whole sum for which the notes were given might be declared due and payable, on the theory that the time of payment of the notes was thereby rendered uncertain.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 407–410; Dec. Dig. § 155.*]

6. BILLS AND NOTES (§ 205*)—TRANSFER WITHOUT INDORSEMENT—STATUTES.

The last clause of Gen. St. Kan. 1909, § 5302, providing that negotiation of an instrument transferred without indorsement takes effect as of the time when indorsement is actually made, has no application to the rights of a transferee of negotiable notes without any indorsement whatever.

[Ed. Note.—For other cases, see Bills and Notes, Dec. Dig. § 205.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
†Rehearing denied June 4, 1914.

**7. BILLS AND NOTES (§ 362\*)—INDORSEMENT—TRANSFER WITHOUT INDORSEMENT—STATUTES—"HOLDER."**

Gen. St. Kan. 1909, § 5302, provides that, where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferror had therein, and the transferee acquires in addition the right to have the indorsement of the transferror, but for the purpose of determining whether the transferee is a holder in due course the negotiation takes effect as of the time when the indorsement is actually made. Section 5311 declares that, in the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable, but a holder who derives his title through a holder in due course, and is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect to all parties prior to him. Negotiable Instruments Law (Gen. St. 1909, § 5248) § 2, defines the word "holder" to mean the payee or indorsee of a bill or note who is in possession of it, or the bearer thereof, and provides that the word "bearer," when used in the act, means a person in possession of a bill or note which is payable to bearer. *Held*, that the word "holder," used in the beginning of the last clause of section 5311, includes any transferee of negotiable paper; and hence, where notes negotiable on their face were transferred by indorsement before maturity, and the indorsee, also before maturity, transferred the notes to defendant S. without indorsement, he was nevertheless a holder, deriving his title through a holder in due course, and as such was entitled to enforce the notes free from equities between the original parties.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 937–943; Dec. Dig. § 362.*

For other definitions, see Words and Phrases, vol. 4, pp. 3319, 3320.]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit by the Nelson Land & Cattle Company against George H. Smith. From a judgment in favor of complainant, declaring all the notes sued on but one void in the hands of Smith for want of power in complainant to execute them, and granting judgment in favor of Smith on the one note, complainant appeals, and Smith prosecutes a cross-appeal. Reversed and remanded, with directions to dismiss the bill and to enter a decree in favor of cross-complainant, Smith, for the amount due on all the notes.

Alfred A. Scott, of Topeka, Kan. (William S. Hamilton and J. M. C. Hamilton, both of Ft. Madison, Iowa, and Owen J. Wood, of Topeka, Kan., on the brief), for Smith.

H. L. Moore, of Excelsior Springs, Mo. (W. A. Craven, of Excelsior Springs, Mo., and Lee Monroe, of Topeka, Kan., on the brief), for Nelson Land & Cattle Co.

Before ADAMS and CARLAND, Circuit Judges, and RINER, District Judge.

CARLAND, Circuit Judge. These are appeals from a judgment rendered in an action brought by the Cattle Company against George H. Smith et al., for the purpose of having certain promissory notes, a mortgage securing the same, and assignments of certain land contracts and certificates executed for the same purpose canceled. Smith filed a cross-bill, asking to have the amount for which he held the notes,

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

mortgage, contracts, and certificates as security ascertained, and a sale of the security to satisfy the same. The trial court granted the relief prayed by Smith as to one note of $1,600, and canceled four other notes of $3,350 each as prayed by the Cattle Company. The facts which determine the correctness of the ruling below appear from the record as follows: November 19, 1907, the Cattle Company, by Fred P. Nelson, president, and Gust A. Nelson, secretary and treasurer, Celia M. Nelson, and Hugo E. Nelson executed and delivered to E. H. Luikart five promissory notes, one of which was in the following words and figures:

"$1600.00                                Sharon Springs, Kan., November 19, 1907.

"On or before one year after date, we, or either of us, promise to pay to E. H. Luikart or order, at the State Bank of Sharon Springs, Sharon Springs, Kansas, the sum of one thousand six hundred dollars, for value received, with interest at 7 per cent. per annum from date. Interest payable annually, and defaulting interest to bear same rate of interest as principal. The makers, indorsers and guarantors of this note hereby severally waive presentment of payment, notice of nonpayment, protest and notice of protest, and diligence in bringing suit against any party hereto, and sureties consent that time of payment may be extended without notice thereof.

"The Nelson Land & Cattle Co.,
"Fred P. Nelson (Pres.).
"Gust A. Nelson (Sec. and Treas.).
"Celia M. Nelson.
"Hugo E. Nelson."

The remaining four notes were of the same tenor and effect, except that they were for the sum of $3,350 each, and became due in two, three, four, and five years from date. The Cattle Company also executed and delivered a mortgage on real estate and assigned in blank and delivered to Luikart certain land contracts and certificates to secure the payment of the notes. The Cattle Company was a corporation, and signed the notes before delivery without any consideration therefor passing to it. On or about May 19, 1908, Luikart, the payee of the notes, for value received indorsed and delivered the notes in due course to Roy C. Smith and Albert Anthes, doing business under the firm name of Anthes & Smith. The indorsement on each note was as follows:

"Without recourse; pay to the order of Anthes & Smith—E. H. Luikart."

The mortgage was duly assigned by Luikart to Anthes & Smith, and the land contracts and certificates transferred to them by delivery. Subsequent to the indorsement of the notes to Anthes & Smith, but before maturity, they were transferred by them to the defendant and cross-complainant, George H. Smith, in part payment of an antecedent debt owing to Smith by Anthes & Smith. The mortgage, land contracts, and certificates were also transferred with the notes. The note for $1,600, due November 19, 1908, was indorsed to George H. Smith in blank by Anthes & Smith. None of the other notes were indorsed by them. No attack is made upon the mortgage or assignments of the land contracts and certificates, except through the attack on the notes; hence they need not be further considered in this opinion. George H. Smith was not a party to any illegality affecting the notes, and fraud is not claimed on the part of any one.

Upon the foregoing facts the Cattle Company claims that the execution of the notes by it as an accommodation maker, without consideration, was ultra vires and void, and that the invalidity of the notes for the above reason can be urged against George H. Smith, the present owner and holder of the same, for the reason: First, that the notes are not negotiable in form; second, if they are negotiable in form, then the facts show George H. Smith not to be a holder in due course. The trial court decided that the notes were negotiable in form, and that the $1,600 note was valid in the hands of George H. Smith, for the reason that it was indorsed by Anthes & Smith, and therefore as to it George H. Smith was a holder in due course, but as to the remaining four notes he was not a holder in due course, because they were not transferred to him by indorsement, and therefore were void in his hands for want of power in the Cattle Company to execute the same.

[1] It must be conceded that it was beyond the power of the Cattle Company to become an accommodation maker of the notes in controversy. Park Hotel v. Fourth National Bank, 86 Fed. 742, 30 C. C. A. 409, and cases cited (8th Circuit); Thompson on Corporations, § 2225; Daniel on Negotiable Instruments, § 386 (1913); Cattle Company v. Loan Company, 65 Kan. 359, 69 Pac. 332.

It is claimed that the notes are not negotiable in form by reason of the following language found therein:

"The makers, indorsers and guarantors of this note hereby severally waive presentment of payment, notice of nonpayment, protest and notice of protest, and diligence in bringing suit against any party hereto, and sureties consent that time of payment may be extended without notice thereof."

[2, 3] The notes are undoubtedly Kansas contracts; and, while we are not bound to follow the view expressed by the highest tribunal of the state upon general principles of the common law merchant (Oates v. National Bank, 100 U. S. 239, 25 L. Ed. 580; Railroad Co. v. National Bank, 102 U. S. 14, 26 L. Ed. 61; Dygert v. Vermont Loan & Trust Co., 94 Fed. 913, 37 C. C. A. 389; Northern Nat. Bank v. Hoopes (C. C.) 98 Fed. 935; Phipps v. Harding, 70 Fed. 471, 17 C. C. A. 203, 30 L. R. A. 513), when, however, a state has adopted a negotiable instrument law by statute, we must give force and effect to such law in all cases where the same is applicable. We do not find, however, that section 5254, Gen. Kan. Stat. 1909, has changed the common law merchant as to the fundamental requirements of negotiable instruments. It provides that such instruments:

"(1) Must be in writing and signed by the maker or drawer; (2) must contain an unconditional promise or order to pay a sum certain in money; (3) must be payable on demand, or at a fixed or determinable future time; (4) must be payable to order or to bearer."

[4] Coming now directly to the point urged by counsel for the Cattle Company, does the language above quoted from the notes offend against the requirement that an instrument to be negotiable must be payable on demand or at a fixed or determinable future time? The only language contained in the notes which could be claimed to violate the above rule is the following:

"And sureties consent that time of payment may be extended without notice thereof."

As between the Cattle Company and Hugo Nelson, who received whatever consideration there was for the notes, it may be said that the former was surety for the latter, but in law and to the world the Cattle Company was one of the makers of the notes, and all persons dealing with them had the lawful right to treat it as such. The time of payment named in the notes was certain when they were made. It was certain when they came into the hands of Luikart, Anthes & Smith and George H. Smith. It is certain now, and still it is claimed that, ever since the notes were made, the time of payment has been uncertain. The time of payment of any promissory note may be extended, and no one has ever thought of urging that fact to destroy its negotiability. So the contention must come to this: That it is the extension without the consent of a party to the note which would make the time of payment as to him uncertain. If, however, there are no parties to the notes whose consent is not required before the time of payment may be extended, then the clause waiving such consent as to the parties not signing the notes cannot affect the time of payment, and we are of the opinion that the present is such a case. In other words, we are of the opinion that the language hereinbefore quoted could not, in law, have applied to any party signing the note, and that therefore it did not operate in any way to render the time of payment of the note uncertain. Being of this opinion, we shall refrain from discussing the question as to what might be our view if the language, used in the note in regard to consent of sureties, could be legally applied to any party who signed the notes. The decisions upon this subject are in conflict. Those tending to sustain the views of the counsel for the Cattle Company have all been examined; and, having in view our construction of the language contained in the notes in question, we do not find any of them parallel to the case at bar.

[5] It is also urged that the provision in the mortgage which was given to secure the notes that in the event of certain contingencies the whole sum for which the notes were given might be declared due and payable render the time of payment of the notes uncertain, and therefore destroy their negotiability. There is no merit, however, in this contention, as has been held by the Supreme Court in Chicago Railway Co. v. Merchants' Bank, 136 U. S. 268, 10 Sup. Ct. 999, 34 L. Ed. 349.

The notes, in our opinion, being negotiable in form, it remains to inquire as to the rights of George H. Smith. What we have said so far in this opinion must result in an affirmance of the judgment below, so far as it was in his favor, as the $1,600 note was received by him in due course by the indorsement of Anthes & Smith. We think that, if George H. Smith must stand on the character of his own title, and cannot claim protection by virtue of the title of Anthes & Smith, then the ruling of the trial court as to the other four notes was right. An indorsee of negotiable paper in due course may obtain a better title than his indorser, and in that event may stand upon such title; but is it necessary that he be an indorsee in order to claim the title of a transferror, who was an indorsee in due course? In other words, cannot George H. Smith, although the notes were transferred to him by delivery, use the Anthes & Smith title to insulate the ultra vires attack

of the Cattle Company? Does not the transferee for value of nego-
tiable paper obtain whatever title his transferror had, irrespective of
the mode of transfer? As we have heretofore said, these notes are
Kansas contracts; and, if there are statutes of that state which deter-
mine the legal position of the holders thereof, they must be enforced.
Sections 5302–5311, Gen. Stat. Kan. 1909, read as follows:

"Sec. 5302—Where the holder of an instrument payable to his order trans-
fers it for value without indorsing it, the transfer vests in the transferee such
title as the transferror had therein, and the transferee acquires, in addition,
the right to have the indorsement of the transferror; but for the purpose of
determining whether the transferee is a holder in due course, the negotiation
takes effect as of the time when the indorsement is actually made."

"Sec. 5311—In the hands of any holder other than a holder in due course,
a negotiable instrument is subject to the same defenses as if it were nonne-
gotiable; but a holder who derives his title through a holder in due course,
and who is not himself a party to any fraud or illegality affecting the instru-
ment, has all the rights of such former holder in respect of all parties prior
to the latter."

[6, 7] The last clause of section 5302 has no application to the
question now under discussion, for there never was any indorsement
of the four notes in question by Anthes & Smith; and counsel for
George H. Smith are not claiming that he was an indorsee in due
course, but that under the first clause of this section and the last clause
of section 5311, George H. Smith obtained whatever title Anthes &
Smith had. The last section does not read: "But a holder in *due
course* who derives his title through a holder in due course and who
is not," etc. Such language would be entirely useless, for if the holder
was a holder in due course, he would be fully protected in any event.
The law was enacted in order to protect all holders of whatever char-
acter of negotiable paper, providing they derive their title to the same
from a holder in due course. Anthes & Smith were holders in due
course, free from any defect of title of prior parties, and free from
defenses available to prior parties among themselves, and could have
enforced payment of the notes for the full amount thereof against all
parties liable thereon. Gen. Stat. Kan. §§ 5305–5310. Being such
holders when they transferred the notes to George H. Smith for value
without indorsing them, the transfer vested in George H. Smith such
title as Anthes & Smith had. Section 5302, supra. This provision of
the law negatives the idea that there can be no transfer except by in-
dorsement, for the reason that the law declares what title a transferee
shall acquire, when it is transferred to him without indorsement. It
is true section 5311 uses the word "holder" in describing the persons
who shall derive their title to negotiable instruments from a holder in
due course; and counsel for the Cattle Company urge the proposition
that George H. Smith was not a holder under the provisions of section
2 of the Negotiable Instruments Law of Kansas. That section pro-
vides as follows:

"Definitions and meaning of terms. In this act, unless the context other-
wise requires: * * * 'Holder' means the payee or indorsee of a bill or
note, who is in possession of it, or the bearer thereof." Gen. St. 1909, § 5248.

The same section provides that the word "bearer" when used in the
act means the person in possession of a bill or note which is payable

to bearer. It is claimed that George H. Smith was not the bearer of the notes because they were not payable to bearer, and that he was not a payee or indorsee for the reason that he was not named as payee in the notes and they are not indorsed to him. It will be noticed, however, that the law only provides that these definitions shall apply unless the context of any particular portion of the law otherwise requires. To decide that the word "holder" as used in the first part of the last clause of section 5311, hereinbefore quoted, does not include a transferee like George H. Smith, who received the notes in question from Anthes & Smith without their indorsement, would be inconsistent with the first clause of section 5302, above quoted, for that section provides that where a holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as transferror has therein. This section simply uses the words "transfer" and "transferee," and in no way declares that a transferee shall also be a holder within the definition of section 2, above mentioned. We, therefore, think, within the language of said section 2, that the context of sections 5302 and 5311 require that the word "holder," used in the beginning of the last clause of section 5311, should be held to include any transferee of negotiable paper.

The result of what we have said is that we are of the opinion that George H. Smith has the same title to the four notes in controversy that was possessed by Anthes & Smith, by virtue of the statutes of Kansas, and that, possessing such title, he is entitled to enforce payment of the same against the Cattle Company. We have thus far considered the question last discussed with reference to the statutes of Kansas, and we think our interpretation of the same is in line with the decision of the Supreme Court of Kansas in Underwood v. Fosha, 89 Kan. 768, 133 Pac. 866; and we think the weight of authority, independent of statute, is in favor of the views hereinbefore expressed. Section 803, 1 Dan. Neg. Inst. (5th Ed.); Gunnison County Commissioners v. Rollins, 173 U. S. 255, 19 Sup. Ct. 390, 43 L. Ed. 689; Town of Fletcher v. Hickman, 165 Fed. 403, 91 C. C. A. 353; Cromwell v. County of Sac, 96 U. S. 51, 24 L. Ed. 681; Bodley v. National Bank, 38 Kan. 59, 16 Pac. 88.

The case of the First National Bank v. McCullough, 50 Or. 508, 93 Pac. 366, 17 L. R. A. (N. S.) 1105, 126 Am. St. Rep. 758, is relied upon by counsel for the Cattle Company. This case may be said to be contrary to the views hereinbefore expressed. It has been reported in 17 L. R. A. (N. S.) 1105, and an interesting note accompanies the report of the case, in which the annotator does not agree with the conclusion reached in the case cited.

We place our decision upon the statutes of Kansas as construed by the Supreme Court of that state, and as we construe them. We cannot see how the ruling thus established can work any injustice. The Cattle Company could not have avoided the notes on the ground of ultra vires in the hands of Anthes & Smith, and they are in no worse position now than they would have been if Anthes & Smith still owned them.

The decree below is reversed, and the cause is remanded, with directions to dismiss the original bill at the costs of. the complainant and to enter a decree in favor of the cross-complainant, George H. Smith, as prayed for in his cross-bill, and that he also recover his costs.