# GAULT v. KANE.

No. 3693.  Opinion Filed January 12, 1915.

Rehearing Denied January 30, 1915.

(145 Pac. 1128.)

1.  **BILLS AND NOTES—Defenses—Transfer——Effect.**   Under the law in force in this state in January, 1909, a promissory note, payable to M. or order, could not be transferred so as to cut off the defenses of the maker, except. by the indorsement of the payee.

2.  **SAME—Action by Transferee—Burden of Proof—Indorsement.** Where K. executes certain promissory notes to M.. or order, and afterwards G. commences an action thereon against K., alleging in his petition that he (G.) purchased said notes from the Bank of T., to which said notes were for value received duly indorsed, sold, and delivered by the payee, and when the allegations of the petition are put in issue by a duly verified answer, and where the undisputed evidence shows that the notes were given without consideration and were the result of a fraudulent transaction, but where it is not proven at the trial that the notes were ever indorsed by the payee, but on the other hand the notes themselves introduced by the plaintiff show no indorsement, the plaintiff is not entitled to recover.

3.  **SAME—Defenses—Pleading and Proof.**  A note payable to order can be transferred free from all equities between the original parties to it only by indorsement, and a transferee of such note must both allege and prove that the note was transferred by indorsement, if he desires to avoid such equities as may be set up against it.

(Syllabus by Sharp, C.)

*Error from District Court, Major County;*

*James W. Steen, Judge.*

Action by C. E. Gault against P. S. Kane.  Judgment for defendant, and plaintiff brings error.  Affirmed.

*S. J. Bardsley* and *D. R. Hite,* for plaintiff in error.

*John V. Roberts* and *Garber & Kruse,* for defendant in error.

Opinion by SHARP, C.   On December 31, 1908, the defendant in error, Kane, executed and delivered to one Henry J. Martens, payable to said Martens or order, two promissory notes, one for $400, a second for $440, each of which notes were due and payable December 31, 1909.   These notes were, in the month of January, following, together with a large number of other notes, aggregating in amount $34,031, hypothecated with the Bank of Topeka, Topeka, Kan., as security for a loan at the time made by said bank to Martens in the sum of $16,000. · The Martens note to the bank not having been paid, suit was brought thereon by the bank in the district court of Shawnee county, Kan., and an order obtained directing the sale of the collateral notes. At the sale subsequently held, the plaintiff in error, who was attorney for the bank, purchased the entire list of collateral notes, including the notes of the defendant, for $100, and it is to recover on these latter notes that suit has been brought.

Plaintiff in his petition alleges that the notes in question were for value received duly endorsed, sold and delivered to the Bank of Topeka by the payee thereof.   Both defendant's original and amended answers, which are duly verified, deny and put in issue each and every allegation contained in plaintiff's petition, save such as are therein specifically admitted.   Among other defenses set up by the defendant in both his answers was a total failure of consideration.   The undisputed evidence shows that defendant in error, Kane, and, it appears, a number of other persons living in the vicinity of Meno, Okla., were victimized by the said Martens, who secured from them a large number of negotiable promissory notes upon the representation that he would deed to them valuable lands in California which he claimed to own.   It is necessary to refer but briefly to the fraud perpetrated by the said Martens, as it stands confessed that the notes were executed and delivered wholly without consideration, and as the result of fraud practiced upon the maker by the payee.   If, then, the plaintiff is to recover, it can only be upon the theory that he, or at least the Bank of Topeka, was an innocent purchaser, before maturity, for value, and without notice of the equities exist-

ing between Kane and Martens. Plaintiff, the purchaser at the foreclosure sale, acquired no greater rights, nor can he be considered a more favored suitor, than if the action were one brought by the bank. It will be necessary, therefore, for us to consider, not the rights of a subsequent purchaser or indorsee from an innocent purchaser of negotiable paper, purchased at a foreclosure sale, unless first it be determined that the Bank of Topeka was in fact an innocent purchaser in due course.

As a part of his case, plaintiff introduced the two notes in question, which do not appear to have ever been indorsed by Martens. The transfer of the notes in question took place prior to the taking effect of the present negotiable instruments act (Comp. Laws 1909, pp. 1044-1070). Under the law at the time in force (section 4661, Comp. Laws 1909), one who writes his name upon a negotiable instrument, otherwise than as a maker or acceptor, and delivers it with his name thereon to another person, is called an indorser, and his act is called an indorsement. By the same statute (section 4657, Comp. Laws 1909), the indorsee in due course is defined to be one who in good faith, in the ordinary course of business, and for value, before its apparent maturity or presumptive dishonor, and without knowledge of its actual dishonor, acquires a negotiable instrument duly indorsed to him, or indorsed generally, or payable to the bearer. When an instrument is made payable to order, the indorsement of the payee is necessary to transfer the legal title; and the transferee without indorsement takes it subject to all equities that attach to it in the hands of his transferror. The rule is one of wide and general application, and is thus stated in 1 Daniels on Negotiable Instruments, sec. 741:

"* * * Where a bill or note payable 'to order' is transferred without indorsement, the transferee does not acquire the legal, but only the equitable, title. The holder under such a transfer must plead and prove the assignment, for the mere possession of the instrument is not evidence of ownership, and its exhibition in a suit not sufficient ground of recovery. And he can only stand in the shoes of his assignor and recover subject to

such defenses as were available against him, although he took it in good faith and for value."

In 2 Randolph on Commercial Paper, sec. 788, the rule is thus announced:

"If a bill is payable to order, and transferred without indorsement, its transfer will be subject to defenses existing against the transferror. To be clear of defense it must be indorsed before maturity and before notice of the defense has come to the transferee. An assignment in like manner, unaccompanied by an indorsement, is subject to defense."

If, therefore, a negotiable promissory note, payable to order, is transferred before maturity by delivery merely, and not by indorsement, the assignee obtains merely an equitable interest in the note, and not the legal title thereto, and he must be prepared to meet all equitable defenses that may be set up against it in the event he brings a suit to enforce its payment.

The rule is thus expressed in the syllabus of *Central Trust Co. of New York v. First Nat. Bank of Wyandotte,* 101 U. S. 68, 25 L. Ed. 876:

"A promissory note, payable to A. or order, cannot be transferred so as to cut off the defenses of the maker, except by the indorsement of the payee."

Many reported cases, in which the law is announced as herein stated, may be found in a comprehensive note to *First National Bank v. McCullough,* 50 Ore. 508, 93 Pac. 366, 17 L. R. A. (N. S.) 1105, 126 Am. St. Rep. 758, found in the latter volume, in which it is said there can be no question but that a note transferred by the payee without indorsement is subject, in the hands of the transferee or any subsequent holder, to all the equities existing in favor of the maker against the payee; that such equities can be cut off only by an indorsement by the payee; that the rule as applied to cases where the payee did not indorse the note upon transfer is upheld by a long line of decisions. Such is the rule announced in Story on Promissory Notes, sec. 120; Story on Bills, sec. 201; Edwards, Bills, Notes & Neg. Instr., sec. 404.

Under the issues joined, it was incumbent upon the plaintiff, not only to plead, but to prove, an indorsement by Martens in the transfer of the notes to the Bank of Topeka. As·was said in this regard, in *Hadden v. Rodkey,* 17 Kan. 429:

"If said note was in fact indorsed, the plaintiff should have alleged it either in his petition, as one of the facts constituting his cause of action, and giving such cause of action a more extended and comprehensive scope, or in his reply, as one of the facts defeating any previously existing defense set up· by the defendant. The indorsement of the note is not a fact constituting any part of the defendant's defense, and it has no connection therewith. The only connection it has with the case is with the plaintiff's cause of action, being in fact the starting point, the foundation thereof, and enlarging and extending its operation and effectiveness. Therefore, if the plaintiff in such a case should desire the benefit that an indorsement of the note would give him, he should plead and prove such indorsement. Otherwise the defendant may set up and prove any defense that he may have to the note."

There being no evidence offered that the notes· of either of them were ever indorsed to the Bank of Topeka by Martens, it was error for the court to overrule the defendant's demurrer to the evidence, interposed after plaintiff had rested his case. Having thus concluded, it will not be necessary to consider the errors assigned by plaintiff in error. Under the evidence Martens could not have enforced payment of the notes, and, as the plaintiff failed to prove an indorsement of the note, neither he nor his assignor occupied a better position than would Martens were the action being prosecuted by him. That the bank took the notes in good faith and for value, so long as there was no indorsement thereof by Martens, does not cut off the equities between the parties thereto, though the bank may have, and probably did, acquire the equitable title to the notes.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.