**PHELPS et al. v. WOMACK et al.**

No. 8030—Opinion Filed July 24, 1917.

Rehearing Denied Sept. 25, 1917.

(167 Pac. 478.)

**Bills and Notes—Transfer—Defenses—Evidence.**

A promissory note, payable to C. or order, cannot be transferred, so as to cut off the defenses of the makers, except by indorsement of the payee; and where note payable to C. is discounted to W. by P. Company, who indorses same to W., and some of the joint makers plead, in their separate answers to a suit by W. on said note, that said note was never delivered to the payee, and it was agreed that the same should not be delivered until other sureties should sign the same, and then only to C. and that P. Company had no authority to discount the note to W., and there is some evidence tending to support this plea of some of the defendants, which would, with such inference and conclusions as might be reasonably drawn

therefrom, be sufficient to reasonably sustain a verdict in favor of some of the defendants, should the jury have found in accordance with their contention, held, it was error of the trial court to direct a verdict for W., plaintiff, against all of said defendants.

(Syllabus by West, C.)

Error from District Court, Bryan County; Jesse M. Hatchett, Judge.

Suit by W. O. Womack against W. H. Phelps and others. Judgment for plaintiff on a directed verdict, and certain defendants bring error. Reversed, and cause remanded, with instructions.

McPherren & Cochran, for plaintiffs in error.

C. H. Elting, J. R. Hannah, and G. F. Deck, for defendant in error Womack.

Opinion by WEST, C. This is a suit instituted by W. O. Womack in the district court of Bryan county, Okla., against W. H. Phelps, W. C. Hatcher, Tom E. Dillan, J. R. Bryant, C. A. Bilbo, and J. O. Hartzog, to recover on promissory note. A copy of said note and indorsements is as follows:

"Caddo, Okla., Dec. 4. 1912.
"$2,400.00 Due Jan. 15, 1913.
"The Caddo National Bank of Caddo.

"January 15th, 1913, after date, without grace, for value received, we or either of us, jointly and severally, promise to pay to the order of the Caddo National Bank twenty-four hundred and no /100 dollars, at its office in Caddo, Okla., with interest at the rate of eight per cent. per annum from maturity until paid, and if not paid at maturity ten per cent. additional on the amount of the principal and interest for attorney's fees if suit is brought upon this note, or if placed in the hands of an attorney for collection. Each of the makers hereof and the indorsers hereon waive diligence, demand, notice of nonpayment and protest and hereby pledge their separate estate on this note and guarantee its payment at maturity, or any time thereafter.

"J. O. Hartzog.
"W. H. Phelps.
"C. A. Bilbo.
"J. R. Bryant.
"W. C. Hatcher.
"Tom E. Dillan."

Indorsements on the back of note:

"Pay the within note to the order of W. O. Womack, G. W. Phillips Co., By J. O. Hartzog, President.

"April 4. 1924, int pd_____$ 52,65
April 14. 1913, int. pd_____ 5.60
April 4, 1913. pd. on note above
    interest _____ 393.35
April 14, 1913, pd._____ 494.40
                                  _____
                                  $887.75"

Defendants filed separate answers, consisting of general denial, and also alleging that the note sued on was signed by the defendants with the understanding that said note was not to become a binding obligation and delivered until the same was signed by each and all of the stockholders of G. W. Phillips Company, and especially G. W. Phillips; that said note was made in favor of the Caddo National Bank, who was to discount same when all of the stockholders of said company had signed the same and to no one else; that said note was never delivered to the Caddo National Bank and never accepted by it, was never delivered to the plaintiff with the consent of the defendants nor the Caddo National Bank; and that no consideration was paid on said note by the payee, and nothing of value received by defendants.

Plaintiff, Womack, testified that he resided in Dallas, Tex., that the note in controversy was brought to him by J. O. Hartzog, who was at that time president of the G. W. Phillips Company, and that the note at that time was payable to the Caddo National Bank of Caddo, Okla., and that J. O. Hartzog indorsed the name of G. W. Phillips Company on the back thereof, and that he paid him the money called for by the note less the interest. This was testified, also, by J. O. Hartzog, who further testified that the defendants knew that he had failed to get the money from the Caddo National Bank, and that he had their authority to discount said note wherever he could. Tom Reed, manager of G. W. Phillips Company, testified to about the same state of facts as J. O. Hartzog.

Defendants introduced F. P. Semple, who testified that he was cashier of the Caddo National Bank, and that the Caddo National Bank agreed to make the loan represented by the note provided all the stockholders of G. W. Phillips Company signed the same; that when it was presented all of the stockholders had not signed it, and that the Caddo National Bank had refused to make the loan; and that the bank never did accept the note, and never transferred the same to W. O. Womack by indorsement or otherwise. W. H. Phelps testified, in substance, on his direct examination, that he was one of the defendants, but that he signed the same as surety of G. W. Phillips Company with the understanding that it was not to be delivered to the Caddo National Bank until the same was signed by all the stockholders of the G. W. Phillips Company, and that the same had not been signed by all the stockholders; further that he had never agreed that said note could be used to procure money from any other source.

The other defendants testified to somewhat a similar state of facts, and some of the said defendants upon cross-examination testified to a state of facts which tended to show that they had agreed for Hartzog to discount said note at any place he could, and that they were advised that said note had been discounted to the plaintiff, and that the proceeds of said note had been used in liquidating the obligations of the G. W. Phillips Company, and they had ratified such action.

At the conclusion of the testimony the court instructed the jury as follows:

"Gentlemen of the jury, there are some disputed facts in this case, from the testimony of the witnesses; but, under the view I take of the law, all of these defendants are responsible for the full amount of the note, even though the facts are true about which each of them has testified. That being the conclusion of the court as to the law of the case, there is nothing for you gentlemen to determine, and I therefore instruct you to return a verdict in favor of the plaintiff and against all of the defendants for the sum of $1,992.83. I have calculated that myself; of course, I am not going to swear to my figures as correct, but I assume they are; but, if not, I will correct it later, when some one shall correct me. I will ask one of you gentlemen to sign as foreman. Given, and defendants except. Jesse M. Hatchett, Judge."

And this action of the trial court is brought here for review.

It will be observed that the note in question shows upon its face that it does not bear a commercial indorsement of the Caddo National Bank, the payee. Section 4099, Rev. Laws 1910, is as follows:

"4099. Transfer Without Indorsement.— Where the holder of an instrument payable to his order transfers it for value without indorsing it, the transfer vests in the transferee such title as the transferer had therein, and the transferee acquires, in addition, the right to have the indorsement of the transferer. But for the purpose of determining whether the transferee is a holder in due course, the negotiation takes effect as of the time when the indorsement is actually made."

In case of Gault v. Kane, 44 Okla. 763, 145 Pac. 1128, the third paragraph of the syllabus is as follows:

"Bills and Notes—Action by Transferee— Defenses—Pleading and Proof.—A note payable to order can be transferred free from all equities between the original parties to it, only by indorsement, and a transferee of such note must both allege and prove that that note was transferred by indorsement, if

he desires to avoid such equities as may be set up against it."

Daniel on Negotiable Instruments, § 741, uses this language:

"Where a bill or note payable 'to order' is transferred without indorsement, the transferee does not acquire the legal, but only the equitable, title. The holder under such a transfer must plead and prove the assignment, for the mere possession of the instrument is not evidence of ownership, and its exhibition in a suit not sufficient ground of recovery. And he can only stand in the shoes of his assignor and recover subject to such defenses as were available against him, although he took it in good faith for value."

In 2 Randolph on Commercial Paper, § 778, the following rule is announced:

"If a bill is payable to order, and transferred without indorsement, its transfer will be subject to defenses existing against the transferor. To be clear of defense it must be indorsed before maturity and before notice of the defense has come to the transferee. An assignment in like manner, unaccompanied by an indorsement, is subject to defense."

In case of Gault v. Kane, 44 Okla. 763, 145 Pac. 1128, supra, Sharp, C., in dealing with a question to some extent similar to the one at bar, used the following language:

"If, therefore, a negotiable promissory note, payable to order, is transferred before maturity by delivery merely, and not by indorsement, the assignee obtains merely an equitable interest in the note, and not the legal title thereto, and he must be prepared to meet all equitable defenses that may be set up against it in the event he brings a suit to enforce its payment. The rule is thus expressed in the syllabus of Central Trust Co. of New York v. First Nat. Bank of Wyandotte, 101 U. S. 68, 25 L. Ed. 876: 'A promissory note, payable to A. or order, cannot be transferred so as to cut off the defenses of the maker, except by the indorsement of the payee.' Many reported cases, in which the law is announced as herein stated, may be found in a comprehensive note to First National Bank v. McCullough, 50 Or. 508, 93 Pac. 366, 17 L. R. A. (N. S.) 1105, 126 Am. St. Rep. 758, found in the latter volume, in which it is said there can be no question but that a note transferred by the payee without indorsement is subject, in the hands of the transferee or any subsequent holder, to all the equities existing in favor of the maker against the payee; that such equities can be cut off only by an indorsement by the payee; that the rule as applied to cases where the payee did not indorse the note upon transfer is upheld by a long line of decisions. Such is the rule announced in Story on Promissory Notes, § 120; Story on Bills, § 201; Edwards, Bills, Notes & Neg. Instr. § 404.'"

While this decision was rendered, construing the law in this state as it existed prior to the adoption of chapter 49, Rev. Laws 1910, known as the Uniform Negotiable Instruments Act, nevertheless under the statute quoted supra, which has been construed by a number of the states which had in force this Uniform Negotiable Instruments Act, it would not in our opinion alter the status of the parties to this controversy. In Crawford Ann. Neg. Instr. Law, p. 90, we find the following:

"Effect of Transfer Without Indorsement. —Under this section a negotiable instrument, payable to the order of a person named, may be effectually transferred by mere delivery, and the assignee takes the legal title, and may sue in his own name but he takes subject to the defenses in favor of prior parties. Martz v. State Nat. Bank, 147 App. Div. 250, 131 N. Y. Supp. 1045; Meuer v. Phoenix Nat. Bank, 42 Misc. Rep. 341, 86 N. Y. Supp. 701; Bank of Bromfield v. McKinley, 53 Colo. 279, 125 Pac. 493; Callahan v. Louisville Dry Goods Co., 140 Ky. 712, 131 S. W. 995; Forter's Adm'r v. Metcalf, 144 Ky. 385, 138 S. W. 314; First Nat. Bank v. Stam, 186 Mo. App. 439, 171 S. W. 567; Sublette v. Brewington, 139 Mo. App. 410, 122 S. W. 1150; Carter v. Butler, 264 Mo. 306, 174 S. W. 399, Ann. Cas. 1917A, 483; Keifer v. Talbert, 128 Minn. 519, 151 N. W. 529; Steinhilper v. Basnight, 153 N. C. 293, 69 S. E. 220; First Nat. Bank of Pomeroy v. McCullough, 50 Or. 508, 93 Pac. 366, 17 L. R. A. (N. S.) 1105, 126 Am. St. Rep. 758; Landis v. White, 127 Tenn. 504, 152 S. W. 1031; Ireland v. Scharpenberg, 54 Wash. 558, 103 Pac. 801; Smith v. Nelson, 212 Fed. 56, 128 C. C. A. 512. But under the statute, as well as under the law merchant, the indorsement is required to constitute the transferee a holder in due course. Mayers v. McRimmon, 140 N. C. 640, 642, 643, 53 S. E. 447, 111 Am. St. Rep. 879. Thus, the purchaser of a certified check, payable to order, who obtains title without the indorsement of the payee holds it subject to all equities between the original parties, although he paid full consideration, without notice. Goshen National Bank v. Bingham, 118 N. Y. 349, 23 N. E. 180, 7 L. R. A. 595, 16 Am. St. Rep. 765; Jenkinson v. Wilkinson, 113 N. C. 532, 18 S. E. 696."

In case of Frick-Reid Supply Co. et al. v. Hunter, 47 Okla. 151, 148 Pac. 83, Justice Sharp, rendering the opinion for the court, in the first paragraph of the syllabus lays down the following rule:

"1. Trial—Direction of Verdict—Evidence —The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence that has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn therefrom, there is enough competent evidence to reasonably

sustain a verdict, should the jury find in accordance therewith."

It would therefore appear, under the state of the pleadings in this case and the evidence as set forth herein, that the trial court below was not warranted in taking the case away from the jury and directing a verdict in favor of the plaintiff. To say the least, it would appear from the evidence offered by the defendants that at least some of them offered evidence which, considered with such inferences and conclusions as might be reasonably drawn therefrom, would have been sufficient to reasonably sustain a verdict in their favor, should the jury have found in accordance with their contention.

For this reason, it is our opinion that said case should be reversed, and the cause remanded, with instructions to the lower court to proceed with said cause not in conflict with this opinion.

By the Court: It is so ordered.